Filed 7/5/13  Marr. of Kimyla and Horgan CA5 (unmodified opn. attached)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of KIMYLA and CHRISTOPHER HORGAN. | |
| KIMYLA HORGAN, Appellant, v. CHRISTOPHER HORGAN, Respondent. | F064969 (Kern Super. Ct. No. S1501-FL-597250) **ORDER MODIFYING OPINION AND DENYING REHEARING [Change in Judgment]** |

**THE COURT:**

It is ordered that the opinion filed herein on June 7, 2013, be modified as follows:

1. On page 9, the first full paragraph, beginning "We conclude the trial" is deleted and the following is inserted in its place:

> During the second trial, the parties argued about whether the granting of Christopher's motion for a new trial had the effect of vacating the prior support order.  Christopher argued it did, and there was no support order in effect; Kimyla argued the order remained in effect pending resolution of the support issue at the second trial.  The trial court seemed to disagree with Kimyla and indicated it probably would enter a support order retroactive to the original trial date.  Kimyla then

1.

requested an interim support order and the trial court entered an order requiring Christopher to pay $300 per month in child support. Neither party challenged that order and the validity of the modification of support is not before this court. The order remained in effect until superseded by the permanent support award in the second judgment.

We conclude the trial court acted in excess of its jurisdiction when it entered a judgment that attempted to retroactively modify the temporary child and spousal support orders, and reduce the amount of the accrued arrearages. The support and arrearages orders were final, binding, and partly executed prior to entry of the second judgment. To the extent the March 9, 2012, judgment purports to order support for periods prior to entry of judgment, it is ineffective.

2. On page 15, the Disposition, as modified, now reads in its entirety as follows:

The March 9, 2012, judgment is modified as follows: paragraphs 1 through 4, inclusive, of section III are stricken; paragraph 5 of section III is modified to provide that the support set out therein shall commence on March 9, 2012. As so modified, the judgment is affirmed.

This modification changes the judgment.

Respondent's Petition for Rehearing is denied. The parties shall bear their own costs on appeal.

_____
POOCHIGHIAN, J.

WE CONCUR:


_____
GOMES, A.P.J.


_____
PEÑA, J.

2.

Filed 6/7/13  Marriage of Horgan CA5 (unmodified opn.)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of KIMYLA and CHRISTOPHER HORGAN. | |
| KIMYLA HORGAN,<br><br>Appellant,<br><br>v.<br><br>CHRISTOPHER HORGAN,<br><br>Respondent. | F064969<br><br>(Kern Super. Ct. No. S1501-FL-597250)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  James L. Compton, Commissioner.

Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, Catherine E. Bennett, and James R. Harvey for Appellant.

The Law Offices of Edward J. Quirk, Jr., and Edward J. Quirk, Jr., for Respondent.

-ooOoo-

Wife appeals from a judgment which set the amount of support to be paid by husband to wife as temporary child and spousal support during pendency of the dissolution action and as permanent post judgment child support. She contends the trial court acted in excess of its jurisdiction by retroactively modifying the temporary support; alternatively, it abused its discretion by reducing the support amount retroactively. Further, she contends the trial court abused its discretion by failing to take into account husband's wealth and substantial assets, rather than just his income, in setting child support. We agree the retroactive modification of child and spousal support exceeded the trial court's jurisdiction. As to post judgment child support, no abuse of discretion has been demonstrated.

**FACTUAL AND PROCEDURAL BACKGROUND**

The parties were married in 1991. They owned a business in New York City that did custom audio-visual installations. In 1999, they sold the business and retired; they lived in a trailer and traveled around the country, while Christopher[1] managed their investment accounts. Their daughter was born in 2000. In 2004, they purchased a home in Lake Isabella and settled down.

In March 2006, Kimyla petitioned for dissolution of the marriage. After a hearing on May 1, 2006, the trial court entered an order granting Kimyla primary custody of their daughter, with visitation for Christopher. The order reflected that the parties continued to occupy the family residence and, "[a]s a form of non-taxable child, spousal and/or family support," ordered the community to pay specified household expenses. The order also allowed the parties to make withdrawals from their joint bank account. The withdrawals

---

[1] In keeping with the usual practice in family law matters, we will refer to the parties by their first names to avoid confusion. No disrespect is intended. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1.)

"shall be, in the court's discretion, deemed a pre-distribution of a community property asset," and the court "retain[ed] jurisdiction to ultimately characterize the aforementioned distributions." After trial commenced on February 20, 2007, the trial court entered a partial stipulated judgment, which addressed custody and visitation, property division, and other issues. It provided that Christopher was to vacate the family residence by March 24, 2007. Each party was authorized to withdraw $5,000 per month from the joint bank account "subject to later characterization or classification by the court," and the trial of all unresolved issues was to be continued.

On December 16, 2008, after trial of the reserved issues, the trial court entered an order requiring Christopher to pay child support of $989 per month and spousal support of $500 per month, effective May 1, 2006. The trial court subsequently reopened the matter for further briefing, then continued the same support amounts in a July 31, 2009, order. A judgment of dissolution, status only, was entered on December 31, 2009. After a hearing on September 21, 2009, the trial court entered its findings and order after hearing on January 21, 2010; it found that Christopher owed Kimyla $58,071 in child and spousal support arrearages for the period of May 1, 2006, through August 20, 2009. It ordered that amount to be disbursed to Kimyla from a specified investment account. On April 26, 2010, judgment on the reserved issues was entered. The judgment contained the order requiring Christopher to pay Kimyla child support of $989 per month and spousal support of $500 per month. The trial court determined that the predistributions taken by the parties totaled $250,000, and Christopher was to be charged with $150,000 of that amount and Kimyla was to be charged with $100,000.

On July 13, 2010, the trial court granted Christopher's motion for a new trial, finding there was insufficient evidence to support the judgment on certain property issues; additionally, it granted a new trial on the issue of child and spousal support because the redistribution of other property might affect the parties' income and change

5.

the proper amount of support. The trial court "retain[ed] jurisdiction to make any orders retroactive to their original dates of filing." The second trial commenced October 26, 2010, and lasted several days. After extensive briefing of the parties' disagreements about the content of the statement of decision, the trial court entered its second judgment on reserved issues on March 9, 2012. The trial court designated an amount of child and spousal support for each year from 2007 through 2010; all amounts were less than those previously ordered for those time periods. For the year 2011 and subsequently, it set child support at $490 per month and spousal support at $400 per month. It found that Christopher had already paid a total of $75,350 in support (including the $58,071 in arrearages designated in the January 21, 2010, order), and ordered that the amount paid be credited first to child support and then to spousal support due under the new judgment.

The total support already paid exceeded the amount of temporary support awarded in the second judgment. Kimyla argues the effect of reducing the amount of support ordered and crediting Christopher with the overpayment is that she will not receive any child or spousal support payments for four years. She appeals, contending the trial court had no jurisdiction to retroactively reduce child and spousal support; alternatively, it abused its discretion by doing so. Further, she contends the trial court abused its discretion by failing to consider Christopher's wealth and assets in setting support amounts, by failing to consider the needs of the child, and by failing to articulate its reasons for disregarding the factors that would have rebutted the presumption that support calculated by the statutory formula was sufficient.

## DISCUSSION

### I.    Standard of Review

Awards of child support and spousal support are reviewed for abuse of discretion. (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1572.) "[W]e do not substitute our judgment for that of the trial court, and we will disturb the trial court's decision only

6.

if no judge could have reasonably made the challenged decision. [Citation.]" (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1046-1047.) In reviewing a child support order, "we are mindful that 'determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule.' [Citation.]" (*Id*. at p. 1047.) "[T]he trial court's discretion is not so broad that it 'may ignore or contravene the purposes of the law regarding … child support. [Citations.]' [Citation.]" (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283 (*Cheriton*).) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711, fns. omitted.)

## II.     Modification of Support Order

During the pendency of any proceeding for the dissolution of marriage, the trial court may order one party to pay spousal support to the other, or one or both parties to pay child support. (Fam. Code,[2] § 3600.) The function and purpose of such a temporary, or pendente lite, support order is fundamentally different from that of a permanent support order. (*In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637 (*Gruen*).) " 'The temporary support award is usually obtained soon after the filing of the petition and before any final determination on the various issues in the dissolution. Its purpose is to maintain the living conditions and standards of the parties [and their children] as closely as possible to the status quo, pending trial and the division of the assets and obligations of the parties.' [Citation.] A temporary order is intended to allow the supported spouse and children to live in their ' " 'accustomed manner' " ' pending the

_____

[2] All further statutory references are to the Family Code unless otherwise stated.

7.

ultimate disposition of the action. [Citation.] 'The order is based on need and is not an adjudication of any of the issues in the litigation.' [Citation.]" (*Ibid.*)

In this action, when Kimyla initially requested a support order, the trial court declined to order payment of child or spousal support. Instead, because the parties were still sharing a household, the trial court ordered that certain joint expenses continue to be paid out of community funds. The first order for payment of child and spousal support was made on December 16, 2008. The trial court ordered Christopher to pay Kimyla child support of $989 per month and spousal support of $500 per month, commencing May 1, 2006. The support award was reiterated in a July 31, 2009, order.[3] After a hearing on September 21, 2009, the trial court entered an order finding that, pursuant to the December 16, 2008, and July 31, 2009, support orders, Christopher owed support arrearages totaling $58,071 as of August 20, 2009. It ordered that the investment firm holding funds in a specified account "forthwith" disburse that amount to Kimyla and that the amount be charged against Christopher's interest in funds held in that account, when the funds in the account were apportioned between the parties and distributed pursuant to further orders of the court. The sum was apparently paid in January 2010.[4] Judgment on the reserved issues was not entered until April 26, 2010.

"An original order for child support may be made retroactive to the date of filing the petition, complaint, or other initial pleading." (Fam. Code, § 4009.) The first order for support imposed the obligation beginning May 1, 2006, the date of the hearing of

---

[3] The register of actions indicates Christopher moved to set aside the December 16, 2008, order. The trial court did not set it aside, but reopened the matter for further briefing. After briefing, it entered its July 31, 2009, ruling, which "maintain[ed] the orders for child support, spousal support and attorney fees set forth in the ruling of December 16, 2008."

[4] During the second trial, Christopher claimed credit for payment of the full amount of the arrearages he was ordered to pay, as well as other payments of support he made during 2010.

Kimyla's initial request for child and spousal support. "A temporary support order is operative from the time of pronouncement, and it is directly appealable. [Citation.]" (*Gruen, supra*, 191 Cal.App.4th at p. 637.) " 'If an order is appealable, … and no timely appeal is taken therefrom, the issues determined by the order are res judicata.' [Citations.]" (*Id*. at p. 638.) The trial court entered its support award, after final briefing, on July 31, 2009. It enforced that award by calculating arrearages and issuing its January 21, 2010, order that they be paid forthwith. They were paid in January 2010. Christopher did not appeal either the July 31, 2009, support order or the January 21, 2010, order determining arrearages and ordering they be paid from the parties' investment account. Thus, the order for payment of arrearages is executed, final, and binding.

The March 9, 2012, judgment after the second trial attempted to modify the temporary support orders. It fixed amounts of child and spousal support to be paid each year, commencing in March 2007, at amounts below those ordered in the July 31, 2009, order. It required that Christopher be given credit for amounts already paid, including the arrearages calculated in the January 21, 2010, order. An award of temporary child or spousal support can be modified only with limited retroactivity, however. It cannot be modified as to amounts that accrued before the date of the filing of the notice of motion or order to show cause to modify it. (§ 3651, subd. (c); accord, §§ 3603, 3653, subd. (a).) When an existing support order is not challenged by a proceeding to modify it, it may not be retroactively modified. (*In re Marriage of Van Sickle* (1977) 68 Cal.App.3d 728, 739-740.) " '[R]etroactive modifications disrupt the settled expectations of the parties on the existing state of their financial affairs.' " (*Gruen, supra*, 191 Cal.App.4th at p. 639.) The record does not reflect that any motion for modification of temporary support was made, so retroactive modification was precluded.

9.

Christopher contends the December 16, 2008, and July 31, 2009, support orders were not orders for temporary support, but the trial court's intended decision on "judgment" support. Consequently, he argues, they were incorporated into the April 26, 2010, judgment on reserved issues, and were set aside along with that judgment when the trial court granted Christopher's motion for a new trial. He contends granting a new trial left the issue of support, both pendente lite and permanent, to be determined de novo in the second trial. The record, however, does not support this argument.

Neither the December 16, 2008, ruling, nor the July 31, 2009, ruling on temporary support, indicates it is a proposed or intended judgment or statement of decision, to become effective only after some further action. Each indicates it is a "ruling," and states: "the court makes the following findings and orders." (Capitalization omitted.) The December 16, 2008, ruling "orders" Christopher to pay Kimyla specified amounts for child and spousal support commencing May 1, 2006; the July 31, 2009, ruling "maintains the orders" for child and spousal support. The trial court did not treat the support order as an intended judgment or statement of decision, which would become final and enforceable only when a judgment was formally entered. Rather, the trial court treated it as an existing support order, calculating arrearages and ordering that they be paid immediately out of a specified investment account. It enforced the temporary support order even though judgment had not yet been entered. The arrearages were paid, and while the dissolution proceeding was still pending, Christopher made further payments in accordance with the temporary support order. Although Christopher moved to set aside the December 16, 2008, order, the trial court did not set it aside, but reopened the matter and accepted further briefing. It then affirmed the support order in its July 31, 2009, order. Christopher did not appeal that order.

The temporary support order and the order determining arrearages were made and enforced before the first judgment was entered on April 26, 2010. The temporary support

10.

order was subject to prospective modification, but only by filing a motion or order to show cause for modification and showing a change of circumstances justifying the modification. (*Gruen, supra*, 191 Cal.App.4th at pp. 638, 639.) No motion or order to show cause for modification was filed. "Although a decree for support 'may be modified as to installments to become due in the future [,] [a]s to accrued installments it is final.' [Citation.] 'Accrued arrearages are treated like a money judgment.' [Citation.]" (*In re Marriage of Perez* (1995) 35 Cal.App.4th 77, 80.) The trial court cannot reduce the accrued arrearages, even if it believes the amount owed is inequitable. (*Id*. at pp. 80-81.)

We conclude the trial court acted in excess of its jurisdiction when it entered a judgment that attempted to retroactively modify the temporary child and spousal support order, and reduce the amount of the accrued arrearages. No motion to modify the temporary support order was made, and the support and arrearages orders were final, binding, and partly executed prior to entry of the second judgment. To the extent the March 9, 2012, judgment purports to modify the support order for periods prior to entry of judgment, it is ineffective.

## III.    Factors Considered in Setting Support

Kimyla challenges the award of child support,[5] contending the trial court abused its discretion by failing to consider Christopher's wealth and assets in arriving at the amount of support to award, and instead considering only his income. She further contends the trial court erred by considering only Christopher's ability to pay support, and failing to consider the child's needs.

### A.    Consideration of wealth and assets

"California has a strong public policy in favor of adequate child support. [Citations.] That policy is expressed in statutes embodying the statewide uniform child

---

[5] In light of our resolution of the retroactivity issue, this discussion pertains only to the award of post judgment child support.

11.

support guideline. [Citation.] 'The guideline seeks to place the interests of children as the state's top priority.' [Citation.] In setting guideline support, the courts are required to adhere to certain principles, including these: 'A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life.' (§ 4053, subd. (a).) 'Each parent should pay for the support of the children according to his or her ability.' (§ 4053, subd. (d).) 'Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children.' (§ 4053, subd. (f).)" (*Cheriton, supra*, 92 Cal.App.4th at p. 283, fn. omitted.)

Section 4055 sets out the formula for a statewide uniform guideline for child support, which is presumed to be the correct amount of support to be ordered. (§§ 4055, 4057, subd. (a).) This "is a rebuttable presumption affecting the burden of proof and may be rebutted by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case, consistent with the principles set forth in Section 4053, because one or more" of specified factors is found applicable. (§ 4057, subd. (b).)

The trial court awarded child support in accordance with the statutory guideline, finding that Kimyla had failed to rebut the presumption that it was the correct amount to be awarded. Kimyla argues that the factor identified in section 4057, subdivision (b)(5), justified a departure from guideline support:

> "Application of the formula would be unjust or inappropriate due to special circumstances in the particular case. These special circumstances include, but are not limited to, the following:

> "(A) Cases in which the parents have different time-sharing arrangements for different children.

> "(B) Cases in which both parents have substantially equal time-sharing of the children and one parent has a much lower or higher percentage of income used for housing than the other parent.

12.

"(C) Cases in which the children have special medical or other needs that could require child support that would be greater than the formula amount." (Fam. Code, § 4057, subd. (b)(5).)

Kimyla does not argue that any of the three circumstances expressly set out in section 4057, subdivision (b)(5), is present; rather, relying on *In re Marriage of DeGuigne* (2002) 97 Cal.App.4th 1353 (*DeGuigne*), she argues a special circumstance exists when the payor spouse has wealth and assets that far exceed the income he generates from employment or investments. In *DeGuigne*, the husband had inherited valuable real property and other assets; neither he nor the wife worked. Both had income from investments. During their marriage, they lived an opulent lifestyle; their spending exceeded their income, requiring the sale of some of the husband's assets to maintain it. The trial court ordered the husband to pay the wife three times the statutory formula child support, and the husband appealed. The question before the appellate court was whether the upward deviation could be justified by special circumstances under section 4057, subdivision (b)(5). (*Id*. at p. 1360.)

The court noted that the "paramount concern in adhering to or departing from the guideline amount must be the interests of the children …." (*DeGuigne, supra*, 97 Cal.App.4th at pp. 1359-1360, citing § 4053.) The trial court had found the guideline amount "would subvert the overriding principle behind the support guideline" and "would not serve the interests" of the children; their interests would be best served by shielding them as much as possible from a drastic reduction in their standard of living. (*Id*. at p. 1360.) The court concluded the support order made would not maintain the family's former standard of living, but would necessitate a substantial reduction in that standard for both the parents and the children. It noted that, where the supporting spouse holds substantial property that does not produce income, "the earning capacity doctrine embraces the ability to earn from capital as well as labor." (*Id*. at p. 1363.) " 'Just as a parent cannot shirk his parental obligations by reducing his earning capacity through

13.

unemployment or underemployment, he cannot shirk the obligation to support his child by underutilizing income-producing assets.' " (*Ibid.*)

The court concluded: "The special circumstance operative here is not just that the de Guignes lived opulently during the marriage, but also that [the husband] has the ability to continue to support his children at quite a comfortable level consistent with his station in life. The [trial] court concluded it would not be in the children's best interest to have their lives changed so radically while their father sheltered, and continued to enjoy, a substantial asset that produced no income." (*Id.* at p. 1366.) The court noted that, in order to meet his support obligation, the husband had options, including "working, continuing to alienate assets or converting some holdings to produce income." (*Ibid.*) The court found no abuse of discretion in the trial court's upward deviation from the formula support, based on special circumstances. (*Ibid.*; see also *Cheriton, supra*, 92 Cal.App.4th at p. 292, holding that, while no California authority mandates consideration of a parent's assets or wealth in setting child support, where those assets are substantial, the court should at least consider imputing reasonable income to them, to the extent necessary to meet the children's reasonable needs.)

On appeal, the burden of affirmatively demonstrating prejudicial error is on the appellant. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.) The appellant must provide an adequate record to demonstrate the error (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295) and must support its arguments with references to the portions of the record that demonstrate the error (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856). References to these portions of the record must include the volume and page number where the relevant matter appears. (Cal. Rules of Court, rule 8.204(a)(1)(C).)

Kimyla argues that Christopher's wealth and assets should have been taken into account in determining the amount of child support to award. She asserts he received

"over $1 million in liquid investment assets, along with his personal vehicles and retirement accounts[,]" in the property division, while she "received the Lake Isabella house, her personal vehicle, and a $490,000 equalizing distribution.…" She cites nothing in the record that establishes these facts or demonstrates that, when all assets and liabilities are taken into account, Christopher received assets with substantially greater value than those she received. The judgment appealed from sets out the property division to which the parties stipulated, but it does not include the value of each asset. Consequently, Kimyla has failed to establish that the trial court had any grounds for departing from the guideline support amount pursuant to section 4057, subdivision (b)(5).

Kimyla also argues that the trial court considered only the parties' incomes in determining the support amount, and failed to consider the child's needs at all. The amount of child support established by the statutory formula is presumed to be the correct amount (§ 4057, subd. (a)); that is, it is presumed to be sufficient to meet the child's needs. In the absence of a showing rebutting that presumption, the omission to mention the child's needs in the judgment or statement of decision does not signify a failure to consider the child's needs. No abuse of discretion in the child support award has been shown.

## B. Articulation of reasons

Kimyla contends the court improperly failed to articulate its reasons for disregarding the section 4057 factors in arriving at the child support amount. Under section 4056, subdivision (a), "whenever the court is ordering an amount for support that differs from the statewide uniform guideline formula amount," the court must state, in writing or on the record, the reasons for deviating from the guideline amount and the reasons the deviation is in the best interests of the children. No such statement of reasons is required when the court orders support in the formula amount. The trial court ordered

15.

support in accordance with the statutory formula, so no written statement of reasons was required.

Citing *Cheriton*, Kimyla argues that a statement of reasons is required whenever a party contends the court should deviate from the formula amount pursuant to section 4057. (*Cheriton, supra*, 92 Cal.App.4th at p. 299.) *Cheriton* discussed the advisability of having an " 'explanation by the trial court when any of the variables bearing on child support are disputed, or when one of the parties contends that the case is appropriate for variation with the guideline as a matter of trial court discretion.' [Citation.]" (*Id.* at p. 299, italics omitted.) It relied on *In re Marriage of Hall* (2000) 81 Cal.App.4th 313, a case in which an explanation was required pursuant to section 4056 because the trial court deviated from the statutory support amount. In *Cheriton*, because the parties' incomes fluctuated, the trial court ordered a special procedure for annual adjustments to the child support, in order to avoid frequent judicial modification proceedings. The appellate court rejected the procedure for a number of reasons, including that it circumvented the statutory procedures for modification of child support, which require evidence and court supervision, and that it would hamper effective judicial review of the modifications. In this context, there would be no "explanation *by the trial court* when any of the variables bearing on child support are disputed," because the trial court would not be involved in the modification procedure. (*Cheriton, supra*, 92 Cal.App.4th at p. 299, original italics.) Thus, *Cheriton* was discussing a procedure that omitted trial court participation. It does not stand for the proposition that the trial court is required to provide a written explanation of its reasons for awarding statutory guideline support whenever a party attempts to rebut the presumption that guideline support is correct by showing that a higher amount of support should be awarded pursuant to section 4057, subdivision (b).

16.

The statement of decision reflects that the trial court considered the assets and income of both parties, with the exception of specified items of income, in determining child support. Further, pursuant to section 4055, the trial court calculated child support based upon Christopher's actual and projected income; it found the presumption of correctness of the child support guideline amount was not rebutted by any of the section 4057 factors. No further explanation of the trial court's imposition of statutory guideline support was necessary.

## DISPOSITION

The judgment is modified by striking the provisions for reduced temporary child and spousal support prior to the date of entry of judgment. As so modified, the judgment is affirmed. The parties shall bear their own costs on appeal.

_____

Poochigian, J.

WE CONCUR:

_____

Gomes, Acting P.J.

_____

Peña, J.

17.