[No. D055950. Fourth Dist., Div. One. Jan. 4, 2011.]

In re the Marriage of DEBORAH GOODMAN and ARTHUR LAWRENCE GRUEN.
DEBORAH GOODMAN GRUEN, Appellant, v.
ARTHUR LAWRENCE GRUEN, Respondent.

628

630

**COUNSEL**

Law Offices of Sondra S. Sutherland and Sondra S. Sutherland for Appellant.

Honey Kessler Amado for Respondent.

OPINION

**McCONNELL, P. J.**—In this dissolution action, we hold the family court exceeded its jurisdiction by modifying a pendente lite child and spousal support order in favor of the wife. The Legislature expressly intends that temporary support orders may not be modified retroactively. Further, the prospective modification of the order was improper because there was no pending order to show cause (OSC) or motion for modification as required. We reverse certain orders with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

Deborah Goodman Gruen and Arthur Lawrence Gruen married in February 1989.[1] In August 2007 Deborah filed an action for legal separation, and for an OSC for child and spousal support. At the time, the parties' four children were between 10 and 16 years of age.[2]

Arthur is a physician and the owner of several medical services businesses. Deborah obtained a medical degree in 1987, but she did not complete her residency. She obtained a Ph.D. in epidemiology in 1993, and she was previously employed part time by the University of California, San Diego, as a research professor. In 2004 she became a stay-at-home mother.

The parties had a high standard of living during the marriage. Deborah's income and expense declaration estimated Arthur's monthly income at $180,000, and her total monthly expenses at $154,600, excluding any amount for savings or investments. The mortgages on their Rancho Santa Fe estate alone were approximately $32,000 per month.

On October 15, 2007, the parties entered into a stipulation that gave Deborah primary custody of the children. As for support, the stipulation provided: "[Arthur] shall continue to make available to [Deborah] all monies previously available to [Deborah] for the last few years for any and all expenditures, and all monies reasonable or necessary for [Deborah] to pay her legal expenses and fees." The stipulation also provided: "[Arthur] shall continue to make resources available to pay any and all expenditures for living expenses of [Deborah] and/or the minor children, including but not limited to all mortgages, liens, encumbrances, and all other debts associated with the property of the parties, and all expenses for remodeling of the family residence." The parties both had legal counsel when they entered into the stipulation.

---

[1] As is customary in family law cases when the parties share a last name, we refer to the parties by their first names.

[2] The parties later stipulated to a separation date of March 31, 2008.

On April 30, 2008, Arthur filed for dissolution of the marriage, and for an OSC regarding child and spousal support and other matters. Arthur's income and expense statement claimed total monthly income of $58,600. On May 16 he filed an amended OSC, which superseded the April OSC. The parties stipulated to the consolidation of the cases.

In June 2008 Deborah filed an updated income and expense declaration. It again estimated Arthur's monthly income at $180,000, but reduced her monthly expenses to $86,575. Deborah filed a declaration, which stated she needed "a substantial support order to pay for the huge expenses Arthur created." (Underscoring, boldface & capitalization omitted.) The declaration explained as follows:[3] "Since moving in 1994 to the upscale Rancho Santa Fe neighborhood, Arthur has elevated his lifestyle and purchased larger, more expensive homes. The family residence is an 8,000 square foot home on over 4 acres, with a guest house, pool and pool house with full kitchen, tennis court, and 3 barns. In about summer of 2006, Arthur insisted on expanding the size of the home, and despite my objections, took out large loans on equity. Arthur constructed an additional 3 bedrooms, home theatre, 4-car garage, and luxurious one-bedroom guest house. I opposed this expensive addition but, . . . my objections went unheeded." The declaration went on to state the monthly "costs to maintain the residence are enormous," including about $4,000 for a groundskeeper, more than $2,000 for a housekeeper and about $2,000 for utilities, plus $9,000 per year for insurance. Further, Deborah's declaration states the parties owned four "luxurious vehicles," a motorcycle, an "ATV & dune-buggy," and a sailboat, and the family customarily took three "lavish" vacations a year. The parties' son attended private school at a cost of $25,000 a year, and the children attended summer camps and programs at a cost exceeding $10,000 a year.

Deborah's declaration also stated Arthur customarily paid many of the family's bills from his business account, to which he had sole access, and until April 2008 he had deposited $67,000 per month into a joint account for Deborah's payment of certain other bills. It also stated that monthly statements she subpoenaed showed monthly deposits into Arthur's business account from $165,000 to $532,000 between April 2007 and January 2008. Further, in a September 2006 financial statement Arthur claimed his income was $2.24 million per year, or approximately $186,000 per month, and the parties' net worth was $24 million.

On August 1, 2008, the court held a hearing on Arthur's OSC. The court ordered Arthur to immediately "pay fully and promptly when due the

---

[3] The paragraph we quote sometimes uses periods in place of commas. We insert commas where appropriate.

monthly housing expenses, the automobiles, all automobile insurance expenses, medical/health insurance expenses, life insurance, credit card payments, and provide evidence of his payments through counsel," and also to pay Deborah $40,000 per month. The order stated it was made "on an interim, without prejudice basis, pending the next hearing." Pursuant to the parties' stipulation, the court appointed Tony Yip under Evidence Code section 730 to assist it in determining Arthur's income available for support.

The hearing on Arthur's OSC was continued to August 21, 2008. At that time, Arthur asked the court to take the matter off calendar insofar as it pertained to support, and to continue the August 1, 2008 support order pending Yip's preparation of a report. Deborah asked the court to increase support based on monthly deposits averaging $220,000 that Arthur made into his account, and on his failure to pay all the bills he was ordered to pay on August 1. The court stated, "I have concerns here of just continuing the temporary order, as [Arthur] suggested, until we get Mr. Yip's report." The court cautioned Arthur's counsel it would be in Arthur's best interest to cooperate in getting information to Yip immediately. The court confirmed that the August 1 order "is enforceable." The parties then stipulated that the "temporary support orders made at the August 1, 2008 hearing are to remain in effect pending further court order." The court also ordered Arthur to pay all the family's therapy bills, and to provide proof of payment of all bills to Deborah's counsel within four days of payment. Further, it ordered Arthur to pay the $40,000 to Deborah in two monthly installments. The court's minutes indicate the hearing on Arthur's OSC was *not* continued. Arthur never filed a motion or OSC for a modification of the August 1 order.

By the time of the October 21 hearing, Yip had not finalized his report. He had requested additional documents from Arthur. At a December 4 hearing on custody and visitation issues, the court again addressed the status of Yip's report. Yip had requested additional documents from Arthur. The court commented, "this is a temporary order that I'm looking at at this point. I'm continuing to reserve jurisdiction on setting temporary orders." The court added, "Any order that I would make on Mr. Yip's report is going to be an interim order only, and pending final settlement at time of trial." The court also stated, "With respect to the current order, interim order on support, that remains in effect."

At a December 19, 2008 hearing on other matters, the status of the Yip report was again discussed. Yip still needed additional documents. The court scheduled a case management conference for February 17, 2009.

On January 16, 2009, Yip issued an unsigned draft report that showed Arthur had $49,000 in monthly cashflow available for support. On February 4, Arthur

filed a motion for "[r]etroactive reimbursement," in which he sought a reduction in his support obligation, retroactive to August 1, 2008, and "credits and reimbursements" for alleged "overpayments of support," based on Yip's draft report. A hearing was set for February 17, 2009, in conjunction with the case management conference.

In mid-December 2008 Arthur had begun drastically reducing the $40,000 monthly payments due Deborah under the August 1, 2008 order. In January 2009 Deborah retained new counsel[4] because she could no longer afford her original attorney. On February 10 she moved ex parte for a continuance of the February 17 hearing, to give her new attorney additional time to review and respond to Yip's draft report. Arthur offered to stipulate to a pendente lite order based on Yip's draft report, pending the court's entry of a "permanent order," but Deborah declined. The court denied a continuance. It commented, "I can always reserve jurisdiction to retroactively modify support orders . . . if, at the time of trial, I find that the support should have been something else, that [Arthur's] income was other than what was reported by Tony Yip."

Also on February 10, 2009, Deborah filed an OSC to enforce the August 1, 2008 support order. She sought $351,332.68 in arrears from Arthur. A hearing was scheduled for April 7, 2009.

The court continued the February 17, 2009 hearing because Yip had not submitted his final report. Deborah's counsel asked the court if there was a pending motion for modification of the August 1 order, and the court said there was not. The court explained the August 1 order, "which is the current order, was a temporary order without prejudice pending the results of Mr. Yip's evaluation, income analysis. The court reserved jurisdiction to retroactively modify that order, basically. That's my recollection." The court noted, "[T]here may have been an overpayment of support since August 1st, 2008. I don't know how it's going to turn out at this point."

Deborah then filed a memorandum of points and authorities in opposition to any modification of the August 1, 2008 order for support retroactive to any date before Arthur filed a new motion or OSC for modification. She challenged the court's jurisdiction to modify the August 1 order since there was no pending motion or OSC for modification.

On March 9, 2009, Yip submitted a second unsigned draft report. The report stated Arthur's monthly income in 2006 was $184,665; in 2007 it was $49,834; and in 2008 it was $93,038. Yip issued his final and signed report on March 18, 2009. This report stated Arthur's monthly income in 2006 was $190,332; in 2007 it was $49,834; and in 2008 it was $68,771.

---

[4] This counsel previously had a limited involvement in the case.

At the March 20, 2009 hearing, Deborah argued the court lacked jurisdiction to retroactively modify the August 1 support order. Her counsel stated "my client is entitled to rely upon the orders made, . . . in settling her own financial affairs, in making her own financial decisions." The court disagreed, explaining, "My review of the record is that at no time did I lose jurisdiction over the issue. I think that each and every hearing, it was clear that we were waiting for Tony Yip's report." The court proceeded with the hearing over Deborah's objection she had not had sufficient time to review Yip's final report. The court denied any further hearing, but allowed the parties to file additional declarations and pleadings pertaining to the report. The court advised the parties it would render a decision in April 2009.

Arthur then filed his opposition to Deborah's OSC. He argued the court made no enforceable order on August 1, 2008. He asserted, "[Deborah] believes she is owed certain sums of money pursuant to . . . some unknown, unsubstantiated and fabricated order that [she] believes the Court entered on August 1, 2008."

On April 10, 2009, the court held a hearing to announce its rulings on Arthur's motion for "retroactive reimbursement" and Deborah's OSC. The court considered Yip's final report and Deborah's receipt of $1,150 in rental income on the guesthouse. The order awarded monthly support for three different periods based in part on varying amounts of time Arthur spent with the children. For the period between August 1, 2008, and December 31, 2008, the court awarded total support of $29,238; for the period between January 1, 2009, and March 31, 2009, the court awarded total support of $37,486; and from April 1, 2009 forward, the court awarded total support of $37,643. Support for the parties' oldest child would terminate in July 2009 after her high school graduation.

The April 10, 2009 order also required that the parties share the uninsured health care costs for the children, retroactive to August 1, 2008, and that prospectively they share the costs of the children's extracurricular activities to the extent they mutually agreed to pay them. Deborah was to make payments on the two cars she used, and Arthur was to pay car and home insurance.

The order also provided that from January 1, 2009, Arthur "will continue to receive credit against his spousal support obligation in the amount of $8,500 per month for any month in which he pays the mortgage on the family residence. If it is [his] intent to pay the mortgage within a given month, then he may deduct $8,500 from the total support order, but the court expects support to be paid first, before the mortgage." At the hearing, the court noted, "I'm ordering father to make child and spousal support payments that are not

sufficient for either party to make that mortgage payment, but mother does have an obligation to contribute to the mortgage . . . to the extent that she remains in the house."

The court reserved the issue of whether Arthur was entitled to reimbursement for "over-payments in support." The court denied Deborah's OSC. It explained that "neither over-payment nor under-payment of past support has been determined. There being no fixed amount of what either party owes the other in terms of support, the court does not authorize issuance of a writ today."

Arthur moved for a reconsideration of the April 10, 2009 support order. He argued the court erred in calculating his income by using a tax deduction for the full amount of interest on the mortgages for the family home, when he was able under tax rules to deduct only part of the interest.[5] Additionally, Deborah moved for clarification of the April 10 order in an effort to "eliminate some areas of misunderstanding" between the parties.

At a hearing on May 26, 2009, the court heard argument on the motions and continued the matter. On June 17, 2009, the court held another hearing to issue its rulings. The court agreed with Arthur on the interest deduction and further reduced the support award. It awarded total support of $24,817 between August 1, 2008, and December 31, 2008; total support of $33,297 between January 1, 2009, and March 31, 2009; and total support of $33,357 from April 1, 2009, with a reduction to $31,523 on July 1, 2009, based on the age of the parties' oldest child. The order states, "It is clear to the court that these support amounts are below the marital standard of living, and the court does not see how the mother is going to meet many of her current expenses."

As to Deborah's request for clarification, the court ordered her to make payments on a piano as long as it was in her possession. Deborah had relinquished possession of one car to Arthur, and the court ordered her to continue making payments on her other car. Further, the court ordered the parties to equally share the cost of the children's auto insurance, "effective the day Deborah began paying" such insurance. It also ordered Deborah to pay her own auto insurance, and retroactive to August 1, 2008, she was to pay 25 percent of the cost of Arthur's "reunification counseling."[6]

---

[5] Family Code section 4059, subdivision (a) provides that the annual net disposable income of each parent shall be computed by deducting from his or her gross income the actual amounts attributable to certain items, including the state and federal income tax liability on taxable income. All further undesignated statutory references are also to the Family Code.

[6] Deborah appeals the following 2009 orders: March 20 (filed July 27), April 10 and June 17 (filed Sept. 17), and May 26 (filed Sept. 4).

## DISCUSSION

### I

### *Standard of Review*

Deborah contends the court lacked jurisdiction to modify the August 1, 2008 support order because (1) a retroactive modification that denies a party accrued temporary support is contrary to and disallowed under the law, and (2) even a prospective modification of temporary support is improper because Arthur had no pending motion or OSC for modification. These are purely legal questions subject to our independent review.

### II

### *Legal Principles*

■ "A variety of interim, 'temporary' orders (also referred to as 'pendente lite' relief) may issue in domestic relations proceedings pending trial and ultimate judgment." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2010) ch. 5, Scope Note, p. 5-1 (rev. # 1, 2010) (hereafter Hogoboom & King).) Pending final resolution of the case, the court may order one spouse to support the other, and either or both parents to pay "any amount necessary" to support the children. (§ 3600.)

"There are fundamental differences in the functions and purposes of pendente lite support and permanent support orders." (*In re Marriage of McNaughton* (1983) 145 Cal.App.3d 845, 849.) "The temporary support award is usually obtained soon after the filing of the petition and before any final determination on the various issues in the dissolution. Its purpose is to maintain the living conditions and standards of the parties [and their children] as closely as possible to the status quo, pending trial and the division of the assets and obligations of the parties." (*Ibid.*) A temporary order is intended to allow the supported spouse and children to live in their " ' "accustomed manner" ' " pending the ultimate disposition of the action. (*In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1038 [102 Cal.Rptr.2d 662].) "The order is based on need and is not an adjudication of any of the issues in the litigation." (*Ibid.*)

■ A temporary support order is operative from the time of pronouncement, and it is directly appealable. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368 [134 Cal.Rptr. 197, 556 P.2d 297].) "When a court renders an interlocutory order collateral to the main issue, dispositive of the rights of the

parties in relation to the collateral matter, and directing payment of money or performance of an act, direct appeal may be taken. [Citations.] This constitutes a necessary exception to the one final judgment rule. Such a determination is substantially the same as a final judgment in an independent proceeding." (*Ibid.*) "If an order is appealable, . . . and no timely appeal is taken therefrom, the issues determined by the order are res judicata." (*In re Matthew C.* (1993) 6 Cal.4th 386, 393 [24 Cal.Rptr.2d 765, 862 P.2d 765]; see *In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 599 [124 Cal.Rptr.2d 342] [" 'It is the general rule that a final judgment or order is res judicata even though contrary to statute where the court has jurisdiction in the fundamental sense, i.e., of the subject matter and the parties.' "]; *Lennane v. Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180, 1185–1186 ["a prior appealable order becomes 'res judicata' in the sense that it becomes binding in the same case if not appealed . . ."]; *Hogoboom & King, supra,* ¶ 5:534.3a, p. 5-212 (rev. # 1, 2010).)

■ "As a general rule, courts will not revise a child support order unless there has been a *'material change of circumstances.'* This rule applies to any form of child support order—i.e., whether pendente lite or 'permanent.' " (*Hogoboom & King, supra,* ¶ 17:25, p. 17-10 (rev. # 1, 2010).) The majority view is that the same general rule applies to temporary spousal support. (*Id.,* ¶ 17:139, pp. 17-35 to 17-36 (rev. # 1, 2010).)

It is well established that even on a showing of changed circumstances a "court may not *retroactively* modify a prior order for temporary spousal support." (*In re Marriage of Murray, supra,* 101 Cal.App.4th at p. 595, italics added; see *In re Marriage of Van Sickle* (1977) 68 Cal.App.3d 728, 739–740 [137 Cal.Rptr. 568]; *Hogoboom & King, supra,* ¶ 17:77, p. 17-29 (rev. # 1, 2010).) Section 3603 provides: "An order made pursuant to this chapter may be modified or terminated at any time except as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate." (See also §§ 3651, subd. (c) [permanent support orders], 3653, subd. (a) [modification of support orders in general], 3692 ["support order may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the support ordered to become excessive or inadequate"].) Section 3603 "makes no provision for 'suspending' a spousal support order, or for modifying it retroactively beyond the date the underlying request for modification was filed." (*In re Marriage of Murray, supra,* 101 Cal.App.4th at p. 595.) "The filing date . . . establishes the outermost limit of retroactivity." (*Ibid.*)

■ In *In re Marriage of Tavares* (2007) 151 Cal.App.4th 620 [60 Cal.Rptr.3d 39], the court rejected the father's attempt to retroactively modify

child support. The father argued the support exceeded the actual costs of care, and thus he had been overpaying. The court explained, the "Legislature has established a bright-line rule that accrued child support vests and may not be adjusted up or down. [Citations.] If a parent feels the amount ordered is too high—or too low—he or she must seek prospective modification. [Citations.] Accordingly, a trial court has no discretion to absolve an obligor of support arrearages, or interest thereon." (*Id.* at pp. 625–626.) The court added: "The Legislature declares state public policy, not the courts. [Citation.] . . . The Legislature has . . . determined *equity is not served by retroactive modification of support orders*, where simplified procedures are available for prospective modification. [Citation.] We may not second-guess these determinations." (*Id.* at p. 628, italics added.)

Additionally, the prospective modification of a temporary support order must be pursuant to a *pending* motion or OSC for modification. (§ 3603.)

■ "A court acts in excess of jurisdiction 'where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' " (*In re Marriage of Murray, supra,* 101 Cal.App.4th at p. 598.)

III

*Analysis*

A

■ The retroactive modification of the August 1, 2008 support order exceeds the court's jurisdiction. The court's view that it could always retain jurisdiction to retroactively modify a temporary order was mistaken. The August 1 order was immediately operative and directly appealable. Arthur did not appeal the order, and instead on August 21 he stipulated it remained in full force and effect. The order is final and not subject to collateral attack. As Deborah explains, "retroactive modifications disrupt the settled expectations of the parties on the existing state of their financial affairs." She was entitled to rely on the amount of temporary support ordered without the threat of having to repay or credit Arthur with any portion of accrued support.

Arthur's assertion the August 1 order is not an enforceable order because the court referred to it as an "interim" order rather than a "pendente lite" order lacks merit. Those terms are used interchangeably in family law proceedings, and they both refer to temporary support orders. (*Hogoboom &*

*King, supra,* ch. 5, Scope Note, p. 5-1.) A given case may have a series of pendente lite orders, each of which is separately enforceable and appealable. Contrary to Arthur's position, it is not only the last of a series of temporary orders that is enforceable and appealable. Further, the court's reference to the order as being made "without prejudice" is unhelpful to Arthur, as that is merely the general rule for temporary support orders. (§ 3604 ["An order made pursuant to this chapter does not prejudice the rights of the parties or the child with respect to any subsequent order which may be made."].) In any event, regardless of the court's intent or how it labeled the August 1 order, retroactive modification is forbidden.

## B

Moreover, even to the extent the modifications of the August 1, 2008 order were prospective, they exceeded the court's jurisdiction since they were not based on any pending motion or OSC for modification. The hearing on Arthur's OSC was continued from August 1 to August 21, 2008, at which time Arthur asked that his OSC be taken off calendar and stipulated that the August 1 support order remain in full force and effect. The court's minutes show the matter was not further continued. The record does not support the court's later recollection that on August 21 it further continued the matter.

■ Even if the court intended to continue Arthur's OSC for nearly a year pending receipt of Yip's final report, that procedure is statutorily proscribed. In modifying support, the court must adhere to substantive and procedural prerequisites. (See *Hogoboom & King, supra,* ¶ 17:25.5, p. 17-11 (rev. # 1, 2010).) Citing section 3603, Witkin explains a modification of a temporary support award ordinarily requires a noticed motion or an OSC. (11 Witkin, Summary of Cal. Law (10th ed. 2005) Husband and Wife, § 198, p. 270; see also *In re Marriage of Van Sickle, supra,* 68 Cal.App.3d at p. 740.) Section 3603 provides that a support order may be modified "at any time except as to an amount that accrued *before the date of the filing of the notice of motion or order to show cause to modify or terminate.*" (Italics added.) Section 3603 does not contemplate that a modification may be based on the OSC that supported the temporary award being challenged. If a modification is based on an OSC that predates the temporary support award to be modified, the modification would apply to support that accrued before the date of the filing of the OSC, in violation of the rule against retroactive modification. Section 3603 shows the necessity of an OSC or motion for modification that is filed *after* entry of the support order to be modified.

A modification must be based on the parties' *current* circumstances, not on circumstances raised months earlier in an OSC for the temporary support order under attack. The motion must be supported by a current income and

expense declaration, meaning one "completed within the past three months providing no facts have changed." (Cal. Rules of Court, rule 5.128(a).) Arthur concedes he has found no legal authority on point to support the court's procedure here. He ignores section 3603.

■ We reject Arthur's argument that through her conduct, Deborah waived any objection to the court's procedure. " 'A waiver is the relinquishment of a known right. "A waiver may occur (1) by an intentional relinquishment or (2) as 'the result of an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.' [Citation.]" ' " (*Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583 [112 Cal.Rptr.3d 27].) The record shows the parties acknowledged that an adjustment in temporary support could be sought once Yip finalized his report. That does not suggest, however, that Deborah agreed to the possibility of retroactive modification in violation of section 3603, or to suspend the requirement that a modification be based on a *pending* motion or OSC. It was not until a February 10, 2009 hearing that the court stated, "I can always reserve jurisdiction to retroactively modify support orders." The court repeated that understanding at a February 17 hearing, after which Deborah, through her new counsel, objected to any modification without a pending OSC or motion for modification. These facts do not suggest waiver.[7]

■ Once a temporary support order is entered, a party seeking a modification of the order must follow the statutory procedure. As Deborah asserts, "it would be improper to artificially prolong an original support hearing to get around the limits on retroactivity." Arthur had legal counsel throughout the proceedings, and he could easily have moved for modification of the August 1, 2008 order on the ground of changed circumstances shown by Yip's final report.[8]

## DISPOSITION

We reverse the court's orders of March 20, April 10, May 26 and June 17, 2009, to the extent they pertain to modification of the August 1, 2008 order

---

[7] Deborah cites opinions holding that a party may not confer subject matter jurisdiction on the court through waiver. The court here, however, had subject matter jurisdiction. " 'Action "in excess of jurisdiction" by a court that has jurisdiction in the "fundamental sense" (i.e., jurisdiction over the subject matter and the parties) is not void, *but only voidable.* [Citations.] In contrast to cases involving other types of jurisdictional defects, a party may be precluded from challenging action in excess of a court's jurisdiction when the circumstances warrant applying principles of estoppel, disfavor of collateral attack or res judicata. [Citation.]' " (*In re Marriage of Murray, supra,* 101 Cal.App.4th at p. 599.) In *In re Marriage of Murray,* the court held a retroactive modification of support was res judicata when a party failed to challenge it. (*Id.* at pp. 599–560.)

[8] Given our holding, we need not reach Deborah's other contentions.

for support, or to Deborah's OSC for enforcement of the order. The August 1, 2008 order is in effect until modified prospectively pursuant to a proper motion or OSC for modification. We direct the court on remand to conduct proceedings to reconsider Deborah's OSC for enforcement of the August 1, 2008 order in light of this opinion. Deborah is awarded costs on appeal.

McDonald, J., and Irion, J., concurred.

A petition for a rehearing was denied January 25, 2011.