Filed 2/14/22  Scurlock v. James CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| REGINALD SCURLOCK, | B310337 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. NF011041) |
| v. | |
| ROMAN JAMES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rolf M. Treu, Judge.  Reversed and remanded.

Cliff Dean Schneider for Appellant.

Gordon & Rees and Charles S. Custer for Respondent.

This appeal arises from a judgment following the recusal of a trial judge, the declaration of mistrial, and a retrial on past due child support and childcare owed by appellant Reginald Scurlock (hereinafter, father) to respondent Roman James (formerly known as Shannon Johnson; hereinafter, mother) for their child, A.J. During the initial trial on child support and arrearages in 2016, the trial judge (Judge Ana Luna) issued pendente lite orders reducing father's obligation to pay monthly support to mother. Several years later, mother lodged a complaint with the Commission on Judicial Performance and filed a verified motion to disqualify the judge. In both the complaint and motion, mother accused Judge Luna of bias against her and other women who have suffered abuse by former partners. Without conceding disqualification, Judge Luna recused herself after which the Supervising Judge of the Family Law Department declared a mistrial and assigned the matter to a new judge.

On retrial, mother requested a sum certain for past due child support and care, relying in part on the pendente lite orders issued by Judge Luna in 2016. After taking the issue of arrearages under submission, the court (Judge Rolf M. Treu) issued a statement of decision setting forth a total amount that father owed for past due support and care. When calculating this amount, the court relied on the pretrial and pendente lite orders the court had previously issued. However, the court excluded from its calculation the orders issued by Judge Luna in 2016, reasoning that the orders were "voided by reason of the declaration of mistrial."

On appeal from the judgment, father contends the trial court erred by voiding the prior pendente lite child support orders when determining the total amount of past child support and care. He also contends that because mother did not personally serve Judge Luna or her clerk as required under the disqualification statutes, Judge Luna cannot be deemed disqualified for her failure to file an answer or consent to disqualification. Absent a valid disqualification, father asserts Judge Luna's orders remained operative through the retrial.

We agree with father, reverse the judgment, and remand the matter for a limited adjudication on the issue of child support arrearages.

## BACKGROUND

A.      *Petition to Establish Paternal Relationship and Request for Child Support*

Several weeks after mother gave birth to A.J. in October 2013, father filed a petition to establish a paternal relationship and a request for full legal custody of the child. Mother filed requests for physical custody of the child and for child support. On April 21, 2014, the court (Judge Lori Behar) issued a minute order awarding the parties joint legal custody of A.J., and father partial visitation. In a May 23, 2014 order, father was ordered to pay mother child support in the amount of $1,313 per month commencing November 15, 2013. He was also found to be in arrears in the amount of $6,471.50.

Father filed a request for modified custody and visitation on May 29, 2014. Following a hearing on father's request, on July 29, 2014, the

3

court granted father increased custody and visitation commencing August 15, 2014.  In its order, the court restated that father was to pay mother $1,313 per month in child support, and additionally ordered father to pay one-half of $350 per week in childcare costs commencing retroactively as of January 1, 2014.  In the event the parties could not agree on an amount of modified child support when father's custody time increased in August 2014, father could file a request to modify support.

Contending that his percentage of visitation with A.J. was "not true," on August 4, 2014, father sought an order reducing child support to $900 per month.  Following a hearing on September 22, 2014, the court issued an order denying father's request to reduce child support, but reduced his share of childcare expenses to $387.50 per month.

B.    *Initial Court Trial Before Judge Luna*

On November 20, 2014, the court (Judge Ana Luna) called the matter for "court trial—short cause."[1]  During trial, the parties agreed they are the biological parents of A.J., and their attorneys "stipulate[d] as to retroactivity for Child Support."  Thereafter, the court modified visitation for the holiday season and continued trial to 2015.

During a March 20, 2015 hearing on mother's ex parte request for modification of custody and visitation, mother stated she had filed a

---

[1]    "Short causes" are cases in which the time estimated for trial by all parties or the court does not exceed five hours.  All other cases are deemed "long cause."  (Cal. Rules of Court, Rule 3.735(a).)

4

report with the Los Angeles Department of Children and Family Services (DCFS). Pending investigation by DCFS, the court suspended father's custody and ordered monitored visitation.

When trial resumed on August 5, 2015, the court addressed, inter alia, requests by parents to modify custody and/or visitation.[2] When trial "resume[d] on the record," the court received documentary evidence, reviewed several videos, and heard testimony from witnesses on custody and visitation issues. The parties rested as to custody and visitation with "child support, reimbursements," and "financial issues" reserved for additional court trial on October 28, 2015. Due to an emergency, the court did not call the matter for court trial in October 2015 and appears to have continued trial to May 2016.

When trial resumed on May 17, 2016, the court indicated that father had filed a "request for order for modification of child custody, visitation, and other: sole legal and physical custody" on May 5, 2016.[3] During trial, the court read into the record a sealed report from DCFS and heard testimony and argument from the parties. "Pending hearing on" father's request for order filed May 5, 2016, and "pending the resumption of the Court Trial," the court awarded father one week on, one week off visitation with the child. Based on the change in custody,

---

[2] Based on an August 5, 2015 minute order from the continued trial, mother filed a request for modification on March 20, 2015, and father filed a request for modification on April 30, 2015. The requests for modification do not appear in the record on appeal.

[3] The May 5, 2016 request for modification is not included in the record on appeal.

the court ordered childcare expenses "paid by [father] suspended." The court continued trial to October 2016.

When the court trial resumed on October 6, 2016, the parties testified "as to remaining issues concerning custody and timeshare, [and] income for purposes of calculating child support." "Both parties represent[ed] to the Court they are not ready to proceed with the issue of child support arrearages and modification at this time." After determining the parties' respective incomes and clarifying the parties currently shared visitation "on a 50/50 basis," the court ordered father to pay "child support in the amount of $255.00 for the minor child, retroactive to October 1, 2016[,] and without prejudice. . . . This order is made pending conclusion of the trial on all issues." The court continued trial to January 2018.

When court trial resumed on January 12, 2018, the court heard testimony and argument on the issues of childcare, arrearages, and add-ons, after which it deemed the issues submitted. The record does not include a final order or ruling by Judge Luna on these issues.

C.    *Mother's Statement of Disqualification and Declaration of Mistrial*

Mother filed a form request for order on February 27, 2019, and stated that she was seeking an order regarding a "Motion to disqualify Judge Ana Maria Luna Pursuant to [former Code Civ. Proc.] 170.1(a)(6)(C)." (See former Code Civ. Proc., § 170.1, subd. (a)(6)(C); see

6

also *id.*, § 170.1, subd. (a)(6)(A)(iii).)[4] Attached to mother's request for order was a verified motion to disqualify Judge Luna from the proceedings. In her motion, mother requested "such disqualification and hereby objects to all hearings in this case before Judge Ana Maria Luna held after [mother's] request for her recusal including the hearing scheduled for February . . . 2019." In support of her motion, mother attached a verified declaration and a series of exhibits totaling over 280 pages. One of the exhibits was a March 5, 2018 complaint with the Commission on Judicial Performance (CJP) in which mother and five other women accused Judge Luna of expressing "inexplicable bias against women—particularly those who have suffered abuse by former partners." The complaint provided examples of perceived bias, including allegations by mother that Judge Luna "shifted nearly the entire financial burden of support for the child to the mother by lowering support payments significantly." Mother did not attach a proof of service to her request for order or her verified motion to disqualify Judge Luna.

Following a hearing on mother's request for order,[5] on March 4, 2019, Judge Luna issued a minute order in which she noted that mother's CJP complaint placed the court in "an untenable position and

---

[4]    Former subdivision (a)(6)(C) of Code of Civil Procedure section 170.1, now codified under current subdivision (a)(6)(A)(iii), provides for the disqualification of a judge whenever "[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial."

[5]    The record on appeal record does not include a reporter's transcript from the February 28, 2019 hearing on mother's request for order.

the court has decided to recuse itself, despite the fact that, as a matter of law, there are no legal grounds for disqualification for cause." "Accordingly, without conceding her disqualification or the grounds asserted for disqualification . . . and with the concurrence of her Supervising Judge, [Judge Luna] refuses to further hear this matter, and returns the case to the Supervising Judge for reassignment."

Following Judge Luna's recusal, supervising judge Thomas Trent Lewis held a hearing on April 18, 2019. During that hearing, Judge Lewis did not issue any rulings concerning Judge Luna's disqualification. Instead, Judge Lewis declared a mistrial in light of mother's CJP complaint, and treated Judge Luna's proposed statement of decision as having "no force and effect" on the adjudication of child support arrearages. When discussing an oral request by mother (that is not relevant here), the court noted: "There are temporary orders in place. They are not modified. If you want them modified, you can ask for that" whenever appearing before the newly assigned judge.

In July 2019, the court (Judge Michael Powell) ordered the parties to meet and confer on mother's requests to modify custody and have an accounting on past due child support. On October 9, 2019, the parties stipulated to setting child support at $0 commencing November 1, 2019. The parties also reserved jurisdiction and retroactivity for trial on arrearages and overages.

D.    *Retrial on Child Support Arrearages*

On September 16, 2020, the court (Judge Rolf M. Treu) called the matter for trial on child support arrearages and attorney fees. After the

court took judicial notice of all prior orders, mother introduced into evidence a spreadsheet listing childcare and support mother alleged was due and paid between November 2013 and October 2019. The spreadsheet listed the following.

Between November 2013 and May 2016, mother listed total amounts of support ranging between $1,110.50 and $1,850.50 per month. Beginning June 2016 (one month after Judge Luna issued a pendente lite order suspending father's childcare payments) mother listed $1,463 for monthly support due to the "custody order made for 50/50 and support." Beginning November 2016 (one month after Judge Luna issued a pendente lite order reducing child support), mother listed $405 for monthly support.

Following a recess at trial, mother and father agreed that father had paid a total of $58,500 in child support. The parties could not agree, however, on the total amount father was ordered to pay for childcare and support. The court responded that it would determine the amount from prior orders for child support and care, after which it heard argument on "what the orders are and what the amounts due are based upon those orders."

Based on the trial record and her own spreadsheet, mother argued that father was in arrears in the sum of $16,550. Relying in part on the orders Judge Luna had issued in 2016, father argued he had overpaid a total of $10,022.25. When discussing Judge Luna's orders, mother's counsel stated: "The trial was vacated by the presiding Judge in April 2019. [¶] . . . [¶] Judge Luna recused herself. And it was vacated. It

9

was ordered to Judge Howard [*sic*].  And this was never raised, and the orders are the orders."

The court replied that it would "take . . . into consideration the fact that there was an order that vacated the trial proceedings based upon whatever basis there was at that time.  The court saw that minute order, so the court will take that into consideration."  The court then took the issue of child support arrearages under submission.

E.    *Statement of Decision and Judgment*

On October 6, 2020, the court issued a tentative statement of decision finding father to be in arrears in the amount of $71,190.90.  The court awarded mother that amount with 10 percent interest per annum commencing October 21, 2020.  When calculating the monthly amount of childcare and support, the court did not account for the May 17 and October 6, 2016 pendente lite orders issued by Judge Luna.  Relying on *Brown v. Municipal Court* (1978) 84 Cal.App.3d 180 (*Brown*), and *Tierney v. Javaid* (2018) 24 Cal.App.5th 99 (*Tierney*), the court found the orders to be "voided by reason of the declaration of mistrial," the effect of which being "as if a trial had never taken place."  After voiding the pendente lite orders, the court determined that based on the pretrial orders, between 2014 and November 1, 2019 (when the parties eliminated support altogether), father was required to pay $1,313 per month for child support and $387 for childcare.

In objections to the proposed statement of decision, father argued that the court's abrupt termination of trial deprived him of the right to fully present evidence of his contributions to childcare expenses.  He

10

also argued that *Brown* and *Tierney* did not support vacating the pendente lite orders issued in a family law proceeding.

The court overruled father's objections, and adopted as final its proposed statement of decision. On November 23, 2020, the court entered judgment against father in the same amount reflected in its statement of decision.

## DISCUSSION

In the most general sense, father challenges the trial court's calculation of childcare and support he was ordered to pay mother, a determination we generally review for abuse of discretion. (*S.P. v. F.G.* (2016) 4 Cal.App.5th 921, 931.) However, when that calculation is based on pure questions of law (i.e., the effects of a mistrial and disqualification of a judge), our review is de novo. (See *S.C. v. G.S.* (2019) 38 Cal.App.5th 591, 598; *Sincavage v. Superior Court* (1996) 42 Cal.App.4th 224, 230.) As we shall discuss, we conclude that the trial court erred by voiding pendente lite child support orders when calculating an overall amount of childcare and support.

A.    *The Effect of Mistrial on Pendente Lite Child Support Orders*

We first address father's principal contention that Judge Luna's pendente lite orders were not voided by the declaration of mistrial. We agree with father that given their unique nature, pendente lite support orders are not voided by the declaration of a mistrial.

11

I.    *Governing Law on Mistrials*

"'A mistrial is the termination of a trial prior to completion, on order of the judge, for error too serious to be corrected.'"  (*Blumenthal v. Superior Court* (2006) 137 Cal.App.4th 672, 678, quoting 7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 181, p. 207.)  A mistrial requires that the case to be "'retried from the beginning.'"  (*Tierney, supra,* 24 Cal.App.5th at p. 110.)

The declaration of mistrial does not necessarily void all orders issued during trial.  Courts may properly grant judgment on some issues while declaring a mistrial and ordering retrial on others insofar as the adjudicated issues are "sufficiently distinct and severable from the others that a limited retrial would not result in an injustice." (*Valentine v. Baxter Healthcare Corp.* (1999) 68 Cal.App.4th 1467, 1478 (*Valentine*); see *Cruz v. HomeBase* (2000) 83 Cal.App.4th 160, 165 ["the trial court may order a retrial addressing only the unresolved claims if the issues are distinct and retrial works no injustice"].)  Where adjudicated issues "on one matter do not depend on" issues that have not adequately been adjudicated, "the remaining matter can properly be determined on retrial."  (*Valentine, supra,* at p. 1478.)

II.    *Analysis*

We conclude that the declaration of mistrial in this case did not void the pendente lite orders issued by Judge Luna on May 17 and October 6, 2016.  We reach this conclusion given the nature of pendente

12

lite orders, as each order constitutes a final and severable adjudication on circumstances unique to the parties at the time each order issues.

During the pendency of any proceeding where the support of a minor child is at issue, the court is authorized to make pendente lite child support orders to "'maintain the living conditions and standards'" of the child. (See *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637 (*Gruen*).) Such orders are "intended to allow the . . . children to live in their ""accustomed manner"" pending the ultimate disposition of the action." (*Ibid.*) Given the limited purpose for which such orders exist, the court's discretion in setting an amount of pendente lite support is "constrained by the statutory scheme, as courts must adhere to the algebraic uniform state child support guidelines in [Family Code] section 4050 et seq."[6] (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 104; see *In re Marriage of Hall* (2000) 81 Cal.App.4th 313, 317; Fam. Code, §§ 3600, 4052-4053, 4055.) It is an error "as a matter of law" to order child support without adhering to the uniform guidelines. (*In re Marriage of Carter* (1994) 26 Cal.App.4th 1024, 1029 (*Carter*).)

Because a pendente lite support order is based on the child's need, the order does not constitute "'an adjudication of any of the issues in the litigation.'" (*Gruen, supra,* 191 Cal.App.4th at p. 637.) Such orders are therefore deemed to be "operative from the [time] of pronouncement" and are directly appealable as a necessary exception to the one final

---

[6] Family Code section 4053 sets forth a list of guidelines to which courts must adhere, including taking "into account each parent's actual income and level of responsibility" for the child. (Fam. Code, § 4053, subd. (c).)

13

judgment rule. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368–369 (*Skelley*); see *ibid*. [pendente lite orders are "substantially the same as a final judgment in an independent proceeding"].)

It is apparent from the foregoing authorities that the declaration of mistrial in this case did not void the pendente lite child support orders. By the court's own statements during the April 2019 hearing in which it declared a mistrial, the court informed the parties it would not modify the "temporary orders." In other words, the court treated those orders as "sufficiently distinct and severable from" the issues to be adjudicated at retrial. While determination of the remaining issue to be retried (child support arrearages; see Fam. Code, § 150) required consideration of what father was ordered to pay in monthly child support and care, the parties never challenged the propriety of Judge Luna's pendente lite orders. We discern nothing in mother's conduct at the retrial suggesting Judge Luna's orders were nullified by the declaration of mistrial.

Noting that Judge Luna had recused herself, mother agreed that "the orders are the orders." Mother never argued that the circumstances at the time, as informed by the uniform state guidelines, required father to pay a larger amount in monthly support between 2016 and 2019. (See *Carter, supra,* 26 Cal.App.4th at p. 1029 [it is an error "as a matter of law" to modify child support without considering the uniform guidelines].) Mother never challenged the pendente lite orders by way of appeal (*Skelley, supra,* 18 Cal.3d at pp. 368–369), or through a motion or order to show cause for prospective modification (Fam. Code, § 3603; *Gruen, supra,* 191 Cal.App.4th at p. 638).

14

On the contrary, mother relied on Judge Luna's pendente lite orders in the spreadsheet she presented at the retrial. Mother correlated the same amounts of monthly support appearing in Judge Luna's pendente lite orders with the time at which each order issued. This appeal is the first instance in which mother has advocated that the pendente lite orders are void. (See *The Swahn Group, Inc. v. Segal* (2010) 183 Cal.App.4th 831, 841 [""It seems patently wrong to allow a person to . . . first [advocate] one position, and later, if it becomes beneficial, to assert the opposite"""].) Thus, for every month in which father's support accrued unchallenged, the accrued installments must be treated as final money judgments. (*In re Marriage of Perez* (1995) 35 Cal.App.4th 77, 80; see Fam. Code, § 291; *Gruen, supra*, 191 Cal.App.4th at p. 638.)

*Brown* and *Tierney*, on which mother (and the trial court) rely, are inapposite to this case. In *Brown, supra*, 84 Cal.App.3d 180, the plaintiff appealed the denial of her petition for writ of prohibition to restrain the trial court from retrying a criminal case following a hung jury and mistrial. (*Id.* at p. 181.) The petition argued that the federal and state constitutions expressed or implied a "right to be acquitted of a crime when a jury disagrees." (*Id.* at p. 182.) Affirming the denial of the petition, the court noted in dicta that a "new trial may, of course, be limited in issues if it takes place after a case has been tried once. A retrial denotes only that a case has been tried before and does not change any of the defendant's rights. [¶] Where a jury fails to agree on

a verdict it is the same 'as if there had been no trial on that issue' [citations].  The case may be reset for trial." (*Id.* at pp. 182–183.)[7]

In *Tierney, supra,* 24 Cal.App.5th 99, the court declared a mistrial after the jury reached a favorable verdict for the plaintiff on a claim for quantum meruit but deadlocked on a claim for specific performance. (*Id.* at pp. 101, 107–108.)  On the plaintiff's request, the trial court decided the claim for specific performance, and found in favor of the defendants.  (*Id.* at pp. 101, 108.)  The plaintiff appealed, and argued that the trial proceedings "'swept away'" a "'pending favorable verdict'" on his claim for specific performance.  (*Id.* at p. 110.)  The court deemed the plaintiff's election to have the trial court decide his claim for specific performance a waiver of any error based on the jury trial proceedings, including the declaration of mistrial.  (*Id.* at pp. 102, 110.)

In so ruling, the *Tierney* court noted that the request sought by the plaintiff (i.e., setting aside the trial court's adverse adjudication on specific performance) "would not restore or somehow reconstitute the original jury or restore its favorable responses to any of the special verdict inquiries, all of which were nullified once the trial court declared a mistrial.  (See *Estate of Bartholomae* (1968) 261 Cal.App.2d 839, 842 ['A mistrial is equivalent to no trial; it is a nugatory trial.']; Wegner et

---

[7]    The dicta in *Brown* have been cited with approval by courts that have vacated interlocutory trial rulings.  (See *People v. Sons* (2008) 164 Cal.App.4th 90, 99–100 [jury instructions]; *People v. Riva* (2003) 112 Cal.App.4th 981, 992 [pretrial rulings on admissibility of evidence], disapproved on another ground in *People v. Anderson* (2020) 9 Cal.5th 946; *People v. Mattson* (1990) 50 Cal.3d 826, 850, fn. 9 [in limine rulings].)

al., Cal. Practice Guide: Civil Trials & Evidence (The Rutter Group 2011) ¶ 12:2, p. 12–1 ['A mistrial *terminates* the trial midproceedings for error . . . that has prejudiced a party's right to a fair trial and that cannot otherwise be remedied. No matter how far the trial has progressed, a mistrial means the case must be retried from the beginning.'].)" (*Tierney*, *supra*, 24 Cal.App.5th at p. 110.) "Reversal here would only secure for [the plaintiff] the right to impanel another jury. But he received an equivalent remedy from the trial court . . . for whatever errors may have occurred in the jury trial's final days." (*Id.* at pp. 110–111.)

Despite finding waiver as to the plaintiff's claim for specific performance, the *Tierney* court separately analyzed a contention on appeal regarding the plaintiff's claim for quantum meruit. (*Tierney*, *supra*, 24 Cal.App.5th at pp. 102, 114.) Analyzing that claim separately, the court reversed the trial court's order granting the defendants' judgment notwithstanding the verdict, as the ruling was inconsistent with the "verdict as rendered by the jury." (*Id.* at p. 114.)

Both *Brown* and *Tierney* support the principal we apply here: if a prior issue has been adjudicated and is deemed final and severable, the declaration of a mistrial does not void the adjudication so long as the retrial may properly be limited to issues that have not yet been determined. (See *Tierney*, *supra*, at pp. 102, 110; *Brown*, *supra*, 84 Cal.App.3d at p. 183.) The pendente lite orders at issue in this appeal were not interlocutory rulings. Each constituted an independent adjudication separate and apart from issues to be litigated at retrial.

17

Thus, Judge Lewis's declaration of mistrial did not void the pendente lite orders.

## B. *Judicial Disqualification*

After our initial review of this case, we directed the parties to address two issues: (1) whether, through Judge Luna's order recusing herself from the case, Judge Lewis's rulings during the hearing on mother's disqualification motion, or through the failure of Judge Luna to file a consent or answer, Judge Luna must be deemed to have been disqualified from this case (see Code Civ. Proc., §§ 170.1, 170.3);[8] and (2) if Judge Luna was disqualified, whether the orders she issued are void and must be vacated, or voidable and to be vacated if properly raised by a party in the trial court.

As to the first question, the parties agree that Judge Luna did not disqualify herself through her recusal order, and was not disqualified by Judge Lewis. Mother contends, however, that Judge Luna was disqualified for the failure to file a consent or answer to her motion under section 170.3. Father contends, and we agree, that because mother did not personally serve Judge Luna or her clerk, Judge Luna was not required to file a consent or answer to mother's motion, the failure of which did not constitute a disqualification.

If a judge who should disqualify herself fails to do so (see § 170.3, subd. (b)(4)), a party may "file with the clerk a written verified

---

[8]     Subsequent references to statutes are to the Code of Civil Procedure.

18

statement objecting to the hearing or trial before the judge and setting forth the facts constituting the grounds for disqualification of the judge. The statement shall be presented at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification. Copies of the statement shall be served on each party or his or her attorney who has appeared and *shall be personally served on the judge alleged to be disqualified, or on his or her clerk, provided that the judge is present in the courthouse or in chambers.*"  (§ 170.3, subd. (c)(1), italics added.)

Section 170.3 provides three options to a judge challenged by a disqualification motion:  the judge may, "[w]ithout conceding his or her disqualification," request another judge to serve (subd. (c)(2)); the judge may, "[w]ithin 10 days after the filing or service, whichever is later," file a consent to disqualification in which case the presiding judge appoints a replacement (subd. (c)(3)); or the judge may file a written verified answer admitting or denying the allegations in the disqualification statement (*ibid.*).  If the challenged judge does not file a consent or answer within the time allowed under the statute, he or she is "deemed to have consented" to the disqualification.  (§ 170.3, subd. (c)(4).)

As father correctly notes, personal service of the disqualification motion on Judge Luna (or her clerk) was a prerequisite to any obligation of the judge to respond, and any obligation of the trial court to rule on the disqualification issue.  The motion, though filed, was

19

never personally served on Judge Luna.[9]  The disqualification issue thus was not properly placed before the trial court for decision, and Judge Luna cannot be deemed to be disqualified by not formally responding to the motion.  (See §§ 170.3, subds. (c)(3), (c)(4); 170.4, subd. (b); *Urias v. Harris Farms, Inc.* (1991) 234 Cal.App.3d 415, 421 [judge need not consider motion to disqualify until properly served].)  That Judge Luna was not disqualified "moots the question whether [her] earlier orders should have been vacated."  (See *Leland Stanford Junior University v. Superior Court* (1985) 173 Cal.App.3d 403, 405.)

//

//

//

//

//

//

//

//

//

//

//

---

[9]      The record includes over 280 pages of mother's motion to disqualify Judge Luna.  We discern nothing in the motion, appellate record, or in mother's appellate briefs evidencing personal service of the motion on Judge Luna or her clerk.  (See § 417.10, subd. (f); Cal. Rules of Court, rule 2.150(a).)

20

## DISPOSITION

The judgment is reversed, and the matter is remanded to the superior court for a limited adjudication on the issue of child support arrearages using as appropriate to the calculation of past due child support and care the pendente lite orders entered by Judge Luna on May 17 and October 6, 2016, as well as the evidence presented, and stipulations entered at the retrial before Judge Treu.  (See *Valentine*, *supra*, 68 Cal.App.4th at pp. 1476–1477.)  The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.

We concur:


MANELLA, P. J.


CURREY, J.

21