Filed 10/27/22  Marriage of Huang and Pabianova CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re the Marriage of FANG HUANG and MARIE PABIANOVA. | B317887<br>(Los Angeles County Super. Ct. No. BD615033) |
| MARIE PABIANOVA,<br><br>Respondent,<br><br>v.<br><br>FANG HUANG,<br><br>Appellant. | |

APPEAL from the order of the Superior Court of Los Angeles County, Anne K. Richardson, Judge.  Affirmed.

Law Office of Noelle M. Halaby, Noelle M. Halaby, and Maria D. Houser for Appellant.

No appearance for Respondent.

\* \* \* \* \*

A former wife sought to obtain an order calculating the amount by which her former husband had underpaid her in child support for stock sales he made back in 2018 and 2019 that the couple agreed would count as income subject to the support obligation. The former wife also sought to hold him in contempt for not paying a discovery sanction. The former husband sought to postpone the calculation of arrears until *after* the contempt hearing on the ground that the calculation might incriminate him in the upcoming contempt hearing. The family court rejected the claim of privilege, and also refused to continue the calculation hearing simply because the former husband had failed to prepare for the possibility his claim of privilege might be overruled. We conclude there was no error, and affirm the order.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Marriage and dissolution*

Fang Huang (husband) and Marie Pabianova (wife) married in January 2010. They separated in October 2014, and the judgment of dissolution ending their marriage was entered in January 2018. They have two children—Cole (born in 2010) and Angelica (born in 2012).

In their stipulated judgment of dissolution, wife and husband agreed to joint legal and physical custody of the children. They also agreed that husband would pay child support to wife of (1) $886 per month, plus (2) 10.5 percent of any income

2

he receives over his base salary of $14,219 per month, which includes (a) "bonus income," (b) income earned from the sale of stock obtained through his "[e]mployee [s]tock [p]urchase [p]lan" and (c) income earned from sales of his incentive stock option shares.

**B.** *Failure to pay child support on additional income earned in 2018 and 2019*

In June 2018, husband sold $25,357.12 of the stock he had obtained through his employee stock purchase plan. Although the terms of the stipulated judgment obligated husband to pay 10.5 percent of that amount—which came to $3,461.25 with unpaid interest—as child support, husband never did.

In July 2019, husband sold $62,847.92 of the stock shares he obtained as part of the incentive stock option program. Although the terms of the stipulated judgment obligated husband to pay 10.5 percent of that amount—which came to $7,828.44 with unpaid interest—as child support, husband never did.

In May 2019, the family court ordered husband to pay $1,742.35 as additional child support due to additional income, but father unilaterally withheld an amount coming to $503.94 with interest.

**C.** *Failure to pay discovery sanction*

On June 18, 2021, the family court ordered husband to pay discovery sanctions in the amount of $10,000 by July 19, 2021. July 19 came and went, and husband never paid the sanctions.

**II.** **Procedural Background**

**A.** *Wife's request for order related to husband's nonpayment of additional income*

On July 12, 2021, wife filed a request for a court order that would (1) calculate that husband owed $11,793.63 in arrearages

3

in child support based on his failure to pay support on the three items of supplemental income described above, (2) require husband to pay attorney fees of $9,782.50 related to wife's arrearages request, and (3) require husband to undergo a vocational evaluation, as he became unemployed soon after the dissolution judgment was entered.

The request was set for hearing in late September and then continued until October 27, 2021.

### B. *Wife's request that husband be held in contempt for nonpayment of the discovery sanction*

On August 20, 2021, wife filed a request to hold husband in contempt because he did not pay the $10,000 discovery sanction by the court's deadline. As part of her request, wife included documentation showing that husband's bank accounts had balances well in excess of $10,000. The court set a date of December 3, 2021, for the contempt hearing.

### C. *Husband's opposition*

In a responsive document filed on October 14, 2021—nearly three months after wife's July 12, 2021 request—husband argued that (1) the hearing on wife's entire request should be postponed until after the December 2021 contempt hearing because husband may incriminate himself, and (2) the hearing be continued in any event to allow husband "to respond substantively."

### D. *The family court's ruling*

At the hearing, the family court ruled that the issues of when husband can pay the arrearages, whether he can pay an attorney fees award, and whether husband should sit for the vocational evaluation were best left until after the contempt hearing, to avoid any possibility that husband's answers about

4

his ability to pay or earn money now might be implicated in the upcoming contempt hearing. But the court expressed its view that the calculation of arrears involving nonpayments from 2018 and 2019 was a "fairly cut and dry issue" of arithmetic calculation. When asked why the calculation of arrearages from several years in the past would impact the upcoming contempt hearing, husband responded only that any "finding" or "testimony" "could very well affect him in the contempt matter," and that whether the prior arrearage payments were "made" or "credited" is "all related." Finding these articulations of possible incrimination lacking in the required specificity, the family court ruled that husband's nonpayment of supplemental income in 2018 and 2019 "does not involve any issue about which [he] would be able to [in]voke the Fifth Amendment." The court then calculated arrearages of $11,793.63 plus interest and continued the remaining matters until after the contempt hearing.

### E. *Appeal*

Husband filed this timely appeal.[1]

---

[1] In a divorce proceeding, the judgment of dissolution is the appealable final judgment (Code Civ. Proc., § 904.1, subd. (a)(1); *In re Marriage of Turfe* (2018) 23 Cal.App.5th 1118, 1120, fn. 1), which means that any subsequent order could be deemed an appealable, postjudgment order (Code Civ. Proc., § 904.1, subd. (a)(2)). However, appealability is not so broad—a postjudgment order that lacks finality in that it contemplates further proceedings is not appealable. (*In re Marriage of Olson* (2015) 238 Cal.App.4th 1458, 1462.) Because the family court here ordered that husband owes a specified sum, that order is appealable even though some issues were continued to the next hearing. (Cf. *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637 [temporary support order directly appealable]; *City and*

5

**DISCUSSION**

Husband argues that the family court erred in adjudicating the amount of child support arrears he owed from 2018 and 2019 because (1) that adjudication ran afoul of his privilege against self-incrimination and even if it did not, (2) the court should have continued the hearing to give husband additional time to address the substantive merits of the arrearages issue. We review the first issue de novo because it involves a question of constitutional law (*In re Taylor* (2015) 60 Cal.4th 1019, 1035 (*Taylor*)), and we review the denial of a continuance for an abuse of discretion but any related due process violation de novo (*Reales Investment, LLC v. Johnson* (2020) 55 Cal.App.5th 463, 468; *Taylor*, at p. 1035). As discussed below, neither argument has merit.

## I. Privilege Against Self-incrimination

Both the federal and California Constitutions guarantee that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15; Evid. Code, § 940.) Because a contempt proceeding carries with it the possibility of criminal penalties (*In re Witherspoon* (1984) 162 Cal.App.3d 1000, 1001-1002), the privilege *potentially* applies where, as here, husband's potential testimony in response to the request for an arrearages calculation may be used in the subsequent contempt proceeding. (*In re Marriage of Sachs* (2002) 95 Cal.App.4th 1144, 1150, 1160 (*Sachs*).) Whether the privilege *actually* applies turns on whether husband, as the person asserting the privilege, is able to

---

*County of San Francisco v. Stanley* (1994) 24 Cal.App.4th 1724, 1727 [postjudgment order modifying child support directly appealable].)

show that "'responsive answer[s] to the question[s posed] or an explanation of why [a question] cannot be answered might be dangerous because'" they ""'would furnish a link in the chain of evidence needed to prosecute" the witness for a criminal offense.'" (*Id.* at pp. 1150-1151, quoting *Hoffman v. United States* (1951) 341 U.S. 479, 486-487 and *People v. Cudjo* (1993) 6 Cal.4th 585, 617.) A trial court may overrule an assertion of the privilege only where the "'proposed testimony "cannot possibly have a tendency to incriminate the person claiming the privilege."'" (*Sachs*, at p. 1151.)

The family court did not err in concluding that any testimony husband might offer regarding the calculation of his child support arrearages could not possibly have any tendency to incriminate him. The pending contempt proceedings are what subjects husband to possible criminal penalties, and the sole issue in those proceedings is whether husband willfully refused to pay the discovery sanction imposed against him in June 2021 and due to be paid in July 2021. But the issues before the family court at hearing on the calculation of arrearages was (1) whether father sold certain stocks in 2018 and 2019, and (2) whether father paid 10.5 percent of the profit from those sales (as well as the amount he unilaterally withheld from the May 2019 supplemental income) as part of his child support payments. Critically, nothing husband might testify to regarding those two questions has any bearing on his ability to pay the discovery sanction imposed more than two years later.

In resisting this conclusion, husband argues that his response to the calculation of child support arrearages might incriminate him because that response might call upon him to address "the characterization of [his] income, and what [he]

7

received, what stocks he has, and which stocks he cashed out[,] which would affect his defense on his ability to pay on the contempt matter." We reject this argument. The stipulated judgment of dissolution already dictates the characterization of his supplemental income (that is, the sale of these specific stocks and interests qualify as supplemental income on which husband owes child support); the transactional records already establish that he sold those stocks and interests; and the other financial records already establish that he did not pay child support corresponding to those sales. This leaves husband arguing, as he did more unabashedly to the family court, that once a person's ability to pay a debt is at issue, that person's entire financial history is covered by the privilege because a person's financial condition back to the beginning of time is "all related." We are aware of no precedent requiring us to construe the privilege against self-incrimination in such an expansive fashion, and we decline to do so in the absence of a more specific demonstration of potential incrimination. No such showing was made here. As it was husband's burden to make that showing, his claim of privilege was properly rejected.

## II. Due Process

A trial court generally has discretion whether to continue a hearing, and a denial of a continuance violates due process only when it is so arbitrary that it effectively denies a party the opportunity to be heard. (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.)

The family court did not abuse its discretion in denying husband's request to continue the calculation of child support arrearages. As explained above, the court correctly concluded that the privilege against self-incrimination did not provide a

8

reason to continue the hearing on the calculation of those arrearages, and the court continued all other portions of the hearing. Husband argues that, upon overruling his claim of privilege, the court should have continued the hearing on the arrearages calculation to give husband the chance to file a substantive response. We disagree. Husband's decision not to be prepared in the event the trial court overruled his claim of privilege does not obligate a court to grant a continuance. Husband took more than three months to file his response to wife's request for arrearages and then showed up at the hearing—two weeks later—still having done nothing to respond on the merits. This substantial lack of diligence does not somehow entitle husband to a further continuance. (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 398 [lack of diligence is a basis to deny a continuance]; cf. *Hamilton v. Orange County Sheriff's Department* (2017) 8 Cal.App.5th 759, 766 [party's "relatively minor lack of diligence" is not a ground to deny a continuance].) The denial of that continuance thus does not constitute an abuse of discretion or an arbitrary denial amounting to a violation of due process.

## DISCUSSION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
HOFFSTADT

We concur:

_____, Acting P. J.
ASHMANN-GERST

_____, J.
CHAVEZ

10