Filed 2/29/24  Marriage of Martinez CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re the Marriage of RAUL D. MARTINEZ, JR., and SABRINA MARTINEZ. | B320256 |
| | Los Angeles County Super. Ct. No. 21STFL00605 |
| RAUL D. MARTINEZ, JR., Appellant, v. SABRINA MARTINEZ, Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elizabeth Scully, Judge.  Affirmed.

Rudy Aguirre for Appellant.

Pamela Rae Tripp for Respondent.

———————————

Raul D. Martinez, Jr., appeals from the trial court's order awarding temporary child and spousal support to his wife Sabrina Martinez.[1]  He contends the court abused its discretion in calculating the award without first granting Raul a continuance to present more current information about his income.  Raul also contends the court abused its discretion by basing the temporary spousal support award on the income analysis prepared by the parties' joint forensic expert because it did not include Raul's income from 2021.  Finding no prejudicial error, we affirm.

## BACKGROUND

The statement of the case in Raul's opening brief contains no citations to the record.  Several paragraphs in the statement of facts also lack citation to the record.  "Each and every statement in a brief regarding matters that are in the record on appeal, whether factual or procedural, must be supported by a citation to the record.  This rule applies regardless of where the reference occurs in the brief." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 96, fn. 2; Cal. Rules of Court, rule 8.204(a)(1)(C).)  Sabrina agrees the opening brief accurately recites the procedural posture of the case and "does not dispute that [Raul] has laid out true facts."  Nevertheless, we do not consider assertions of fact that are not part of the record on appeal. (See *Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 29 ["It is axiomatic that an appellant must support all statements of fact in his briefs with citations to the record [citation] and must confine his statement 'to matters in the record on appeal.' "].)

---

[1]     We refer to the parties by their first names for the sake of clarity.

Raul and Sabrina were married in June 1995 and separated more than 24 years later in October 2019. Raul filed for divorce on January 20, 2021. As Raul's payment of child and spousal support would be an issue in the case, the parties stipulated to the appointment of a forensic accountant as the court's expert under Evidence Code section 730. The court entered the order appointing the expert under the stipulation on May 11, 2021. The expert was to determine (1) Raul's income available for child and spousal support based on an analysis of Raul's income from January 1, 2017 through April 30, 2021, or any other later dates on which the parties agreed; and (2) the community's interest in Raul's businesses. Raul agreed to pay the expert's fees.

Based on the stipulation and order, Raul promptly was to give the expert all documents and information he requested. The expert was to give counsel a copy of the written reports he prepared "as soon as they [were] available." The parties agreed that, within 30 days of receiving a report, they would give the expert, in writing, any objections to his findings and conclusions and any "additional factual information" they believed he should consider. The parties also agreed the expert's reports would "be admissible into evidence at any hearing or trial in this proceeding without any further foundation, subject to the right to cross examination by counsel."

On August 13, 2021, Sabrina filed an FL-150 form income and expense declaration (I&E), dated July 29, 2021. A community property business employed Sabrina. Her last month's income from wages or salary was $12,000, and her average monthly income from wages or salary was $13,000. Sabrina declared her average monthly "proposed needs" were

$26,771.91 a month. She estimated Raul's gross monthly income was $249,917.75 based on his I&E filed March 4, 2021 and its attachments.

Along with her I&E, Sabrina filed a request for order (RFO) for child and spousal support, as well as for attorney fees and costs.[2] She asked for guideline child support for the couple's minor son—then 16 years old—and guideline spousal support, retroactive to May 1, 2021. Sabrina's spousal support declaration described the standard of living established during the marriage as "very high." Among other things, the family went on expensive vacations, the couple drove expensive cars, Raul had bought Sabrina expensive jewelry and gifts, she shopped at designer retailers, and they owned two homes worth millions of dollars, as well as rental properties. Sabrina described Raul as a "high earner," who earned "millions each year between compensation and perquisites."[3]

---

[2] Sabrina's request for attorney fees is not an issue in this appeal.

[3] Raul's March 4, 2021 I&E attached to Sabrina's RFO stated he was paid $37,500 (gross) a month as president and CEO for King Taco Restaurant, Inc. He stated his last month's income from salary or wages was $32,692.32, with an average monthly income of $183,794.08 from salary or wages. He also received $66,123.49 in average monthly self-employment income from his property management business, RDM Investments, Inc./RDM Capital LLC. What appear to be W-2 forms for 2020 show Raul received $2,189,182.82 in salary from King Taco, and $16,346.18 from RDM Investments, Inc. The 2020 profit and loss statement for RDM Investments lists total year to date income as $5,378,501.24. RDM Capital LLC's 2020 profit and loss statement shows net income of $319,141.93. Raul's I&E and

Sabrina declared Raul "gave" her a paycheck once a week that she used to pay for groceries, her car expenses, clothes, and other basic necessities. She declared she would be unable to pay her living expenses without spousal support, while Raul earned sufficient income to support both parties at the marital standard of living. The hearing on Sabrina's RFO was set for November 23, 2021.

In the interim, Sabrina apparently filed an updated I&E on November 9, 2021. It is not part of the record, but counsel and the court referred to it at the November 23 hearing.[4] On November 17, 2021, Raul also filed an updated I&E. He stated his last month's and average monthly income from salary or wages was $35,143, and his last month's and average monthly self-employment income from RDM Investments/RDM Capital was $12,115. Paystubs from RDM Investments and King Taco show Raul's gross earnings were $5,769.24 and $8,173.08, respectively, for the one-week period from October 25 to October 31, 2021. Raul also attached a supplemental income and loss statement for 2020 showing a net loss on four rental properties for that year.

On that same date, Raul filed a responsive declaration to Sabrina's RFO. He asked for a child and spousal support order

schedule of assets listed assets (stocks, bonds, accounts, and real and personal property) worth millions of dollars.

[4] Raul asserts Sabrina's updated I&E listed her estimated monthly expenses as $116,764. He cites his responsive declaration in support of this assertion, but his declaration does not include this figure. We do not consider it. (*Pierotti v. Torian, supra*, 81 Cal.App.4th at p. 29.)

5

based on his year-to-date wages and salary. Raul agreed Sabrina accurately described the marital standard of living but declared it "was on a significant decline since approximately three years ago." He declared Sabrina's estimate of his gross monthly income was based on his 2020 income, which included a substantial bonus for work performed in 2019 that he would not receive in 2021.[5] Raul averred his total income for 2021 was "significantly lower than it was in earlier years due to the pandemic." He stated he had been paying for the monthly expenses for the family residence since the date of separation. He declared that, if the court ordered the support payments Sabrina requested, he would not have sufficient cash flow to pay other community debts he currently paid. Raul attached a DissoMaster[6] report to his responsive declaration based on 2021 monthly wages and salary of $52,980 and $692 in other taxable income.

At the November 23 hearing, Sabrina's counsel ensured the court had Sabrina's updated I&E, filed November 9, 2021, and noted the joint forensic expert's report was attached to it.[7] In discussing the income figure to use to calculate support, the court confirmed with Sabrina's counsel that he wanted the court to use the report's "significantly higher" total monthly income

---

[5]     Raul's December 29, 2020 paystub from King Taco—attached to Sabrina's RFO—is for $250,000 in "Bonus Pay."

[6]     DissoMaster is a computer program courts use to calculate guideline support. (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 523, fn. 2.)

[7]     As with Sabrina's November 2021 I&E, the joint forensic report is not part of the appellate record.

6

figure—$397,600—for Raul's income rather than the figure Raul had proposed in his DissoMaster.  When asked why the court shouldn't use the parties' joint forensic expert's numbers, Raul's counsel said the report was based on "stale" numbers from December 2020.  Raul's counsel conceded Raul had not given the expert his 2021 income information because Raul "hadn't filed [taxes] for 2020 yet."[8]  The court asked if there was any evidence before it showing Raul's "2021 income is drastically different from the 2020 income."  In response, Raul's counsel said Raul's paystubs filed with his November 17 I&E were the only evidence.

The court noted the joint forensic report included information about wages and also investment income, trust income, rental, and other income.  Sabrina's counsel argued Raul's November I&E—which Raul had not given to the forensic expert—was "defective" because it didn't include "any profit and loss of the business," which was "substantially different from the forensic [report]."[9]  Counsel noted the forensic expert had

---

[8]     When describing this exchange in his opening brief—without citation to the record—Raul states, "the 2021 income tax return had not been fi[le]d yet."  We do not know if, at the hearing, counsel mistakenly said 2020 instead of 2021, intended to refer to the 2020 tax return, or if the reporter's transcript contains a typographical error.

[9]     Sabrina's counsel also argued Raul's response to the RFO was late, depriving Sabrina of the opportunity to file a reply.  Raul's counsel asserted Sabrina's counsel knew Raul was out of the country and unable to file a timely response.  He represented they had discussed continuing the matter, and Sabrina's counsel had said, "[W]e'll talk with the court."  Raul's counsel did not

7

looked at Raul's historical income over five years from 2016 through 2020: $6.8 million in 2016; $8.7 million in 2017; $4.6 million in 2018; $5.7 million in 2019; and $5 million in 2020. The court articulated its understanding of Sabrina's counsel's argument: "So in terms of [Raul's] staleness argument being that something about looking at past income might not be predictive, you want me to understand that the work that the joint forensic did was based on an average of past years at least with regard to the wages." Sabrina's counsel added that Raul's 2020 income "was a down year" due to the pandemic, so Sabrina believed it likely would go up in 2021. Raul's counsel responded that the bonus Raul received in 2020 was for work performed in 2019.

Raul's counsel asked the court to continue the matter "so we can get the updated information so we can get the court [an] accurate number [of] what my client's current income is available for support." The court verified with counsel that he was basing his request for a continuance on the ground "that the joint forensic hasn't been provided 2020 information yet."[10] Sabrina's counsel argued the parties had received the joint forensic report more than three weeks earlier and—based on the stipulation and order—Raul's counsel "was supposed to file any objections or have a conference with [the expert]," rather than just come to court. Reading from paragraph six of the stipulation

object to the court looking at Sabrina's proposed DissoMaster that her counsel had brought to the hearing, however.

[10]    Again, it is unclear if the court intended to say "2021 information" or was referring to the 2020 tax returns. Raul's brief suggests the former.

8

and order, the court clarified counsel was referring to the provision that stated, "within 30 days of receipt of written report, the parties agreed to provide the expert in writing with any and all objections or factual information they believe the expert should consider."

The court denied Raul's counsel's request for a continuance and stated it would be making interim, temporary pendente lite support orders. Because the court had to "wrap up," it continued the hearing to December 8, 2021 for the sole purpose of announcing its ruling. On December 8, the court ruled. The court adopted the income analysis from the joint forensic report, dated October 26, 2021. The court ordered Raul to pay Sabrina guideline child support in the amount of $23,720 per month beginning January 1, 2022. The guideline calculation was based on a stipulated 10 percent custodial timeshare for Raul, wages and salary of $183,800 per month for Raul and $14,500 per month for Sabrina, self-employment income of $194,148 per month for Raul, and other taxable income of $23,652 per month for Raul and $1,500 per month for Sabrina.

The court also granted Sabrina's request for temporary spousal support. The court noted temporary spousal support "is to maintain the party's living conditions and standards in as close to the status quo position as possible pending trial and the division of their assets and obligations." The court stated it did not use the guidelines to calculate temporary spousal support. The court explained:

> "The court focused instead on the supported
> party's needs as set forth in the two income
> and expense declarations that she submitted[,]
> which the court notes differ quite dramatically

9

from one another; but the law is that subject to the ability to pay, the court may order any amount necessary to support the other spouse at the accustom[ed] marital lifestyle."

The court ordered Raul to pay Sabrina temporary spousal support in the amount of $45,000 per month beginning January 1, 2022. The court reserved jurisdiction to determine retroactivity of the temporary child and spousal support payments from May 1 through December 31, 2021.

On January 7, 2022, the court filed its findings and order after hearing. Raul filed a timely notice of appeal on March 4, 2022.

## DISCUSSION

### 1. *Standards of review*

We review child and spousal support orders for an abuse of discretion. (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327 (*Wittgrove*).) " 'To the extent that a trial court's exercise of discretion is based on the facts of the case, it will be upheld "as long as its determination is within the range of the evidence presented." ' " (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1443; see also *In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 104 [on appeal from modification of temporary spousal support award, reviewing court "determine[s] whether factual findings are supported by substantial evidence, and if so, affirm[s] if any reasonable judge could have made such an order"].) Nor will we reverse a court's order based on its denial of a continuance absent a showing of an abuse of discretion and prejudice. (*People v. Doolin* (2009) 45 Cal.4th 390, 450.)

" 'An abuse of discretion occurs "where, considering all the relevant circumstances, the court has exceeded the bounds of

10

reason or it can fairly be said that no judge would reasonably make the same order under the same circumstances."  [Citation.]' We ' "must accept as true all evidence tending to establish the correctness of the trial judge's findings, resolving all conflicts in the evidence in favor of the prevailing party and indulging in all legitimate and reasonable inferences to uphold the judgment." ' " (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 898–899 (*Bower*).)

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)  "Stated another way, all presumptions are indulged to support the trial court order or judgment 'on matters as to which the record is silent, and error must be affirmatively shown.' " (*Smith v. Ogbuehi* (2019) 38 Cal.App.5th 453, 473.)

**2.**    ***The court did not abuse its discretion in denying Raul a continuance***

Raul argues the court's denial of his request for a continuance was a prejudicial abuse of discretion because—had the court granted the continuance—he could have presented current financial information that reasonably would have changed the guideline calculation of child support and possibly the court's calculation of temporary spousal support.[11]

---

[11]    Sabrina argues the denial of a continuance is not a directly appealable order, and we thus should not consider this issue. (See *Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527

Generally, trial courts have broad discretion in deciding whether to grant a continuance. (*Freeman, supra*, 192 Cal.App.4th at p. 527.) "[A]ny error in failing to grant a request for a continuance . . . is reversible only if it is tantamount to the denial of a fair hearing. [Citations.] There is no presumption of prejudice. [Citations.] Instead, the burden to demonstrate prejudice is on the appellant." (*Id.* at pp. 527–528.) We may not disturb the trial court's exercise of its discretion, "in the absence of a clear abuse thereof appearing on the record." (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984.) The complaining party bears the burden to demonstrate from the record that an abuse of discretion has occurred. (*Id.* at p. 985.)

Raul has not demonstrated he was denied a fair hearing. Nothing in the record suggests he did not receive sufficient notice of the hearing on Sabrina's RFO. We also presume Sabrina timely served the I&E she filed November 9, 2021, two weeks before the November 23 hearing. In any event, Raul does not contend he did not timely receive Sabrina's filings.

Raul also had the opportunity to be heard. Although filed late, Raul's responsive declaration, updated November 2021 I&E,

---

(*Freeman*) [ruling on a motion for continuance is not an appealable order].) We do not construe Raul's appeal as from the court's denial of his request for a continuance. Rather, Raul has appealed from the court's order awarding temporary support to Sabrina—a directly appealable order. (See *ibid.* [failure to grant continuance "is reviewable on appeal from the judgment"]; *Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637–638 (*Gruen*) [temporary support order is " 'substantially the same as a final judgment in an independent proceeding' " and directly appealable].)

12

and proposed DissoMaster calculation were before the court. Nothing in the record indicates the court did not consider those materials—including the evidence Raul's counsel said showed Raul's 2021 income was significantly different from his 2020 income. Quite the opposite, the court directly referenced those documents during the hearing. The court also heard argument about the income analysis in the joint forensic expert's report as compared to the numbers from Raul's November 2021 I&E and proposed DissoMaster. The court specifically noted the $397,600 monthly average income the report attributed to Raul was "significantly higher" than that reflected in Raul's proposed DissoMaster attached to his responsive declaration.

Raul nevertheless contends he was denied a fair hearing because the joint forensic expert's report—on which the court relied—did not include his income from January 1, 2021 to April 30, 2021, as provided in the parties' stipulation and court's order. Raul's counsel agreed with the court's assessment that he sought a continuance on the ground "that the joint forensic hasn't been provided 2020 information yet." (We will assume the court meant Raul's 2021 income information.) We cannot conclude the court abused its discretion by denying Raul a continuance to provide that information to the expert or to the court, however.

Raul's counsel did not dispute Sabrina's counsel's representation that the parties had received the joint forensic report, dated October 26, 2021, more than three weeks before the November 23 hearing. Although the time to object to the report apparently had not expired yet, Raul could have given the forensic accountant his income information from January through April 2021 well before the hearing on Sabrina's RFO, if not before the expert completed the report. And, as the report

13

apparently was attached to Sabrina's November 9 I&E, Raul could have filed an objection to its purported incompleteness with his responsive declaration.

Critically, Raul's counsel admitted Raul had not provided his 2021 income information to the expert—the very information Raul contends makes the analysis incomplete—because he had not filed his taxes yet. Thus, the expert could not have included that information in his analysis. Nothing in the record suggests a brief continuance would have enabled Raul to file his taxes so that he could provide the expert, or the court, with his 2021 income information (or 2020 tax returns). Nor did Raul explain why he could not have given the expert his 2021 paystubs or monthly profit and loss statements for his businesses before filing his taxes.

In any event, Raul has not demonstrated how the January through April 2021 income information likely would have made a difference to the expert's analysis or the court's ruling. The expert based his income analysis on a five-year historical average.[12] Raul did not demonstrate how adding four months of lower wages would have substantively changed that analysis or affected the court's findings. And, as Sabrina argues, Raul did not provide evidence to explain why his income purportedly had dropped so dramatically.

Moreover, the court's orders were interim, temporary orders pending a final adjudication of the issues. As we discuss

---

[12] That is how Sabrina's counsel described the expert's analysis to the court. As Raul's counsel did not object to that characterization—and the report is not part of the record— we presume it is accurate.

below, temporary spousal support serves a different purpose than permanent spousal support and is subject to change.  (See *Gruen, supra*, 191 Cal.App.4th at p. 637 [" 'There are fundamental differences in the functions and purposes of pendente lite support and permanent support orders.' "]; *In re Marriage of Pletcher* (2021) 68 Cal.App.5th 906, 913 (*Pletcher*) [" 'Temporary support . . . usually is higher than permanent support because it is intended to maintain the status quo *prior* to the divorce.' "].) The court's order did not preclude Raul from presenting additional evidence for the court to consider before making its final determinations as to Raul's payment of child and spousal support.[13]  (See Fam. Code, § 3603 [support orders made during pendency of proceedings "may be modified or terminated at any time, except as to an amount that accrued before the date of filing" of motion or order to show cause to modify or terminate].) Indeed, as Raul's counsel stated at the hearing, the joint forensic report was an interim one.  The expert had not yet prepared his final analysis of Raul's income available for support.  In any event, Raul could have asked the court to modify the temporary orders after giving the expert his tax returns, once filed, and/or information about his income for 2021.

For the first time on appeal, Raul argues a continuance would have enabled him to object to the joint forensic expert's report as incomplete, and to cross-examine the expert on his findings, under the terms of the parties' stipulation and the

---

[13]  The trial court also reserved jurisdiction on the issue of retroactivity of the temporary support order from May 1 through December 31, 2021, and any credits to be given Raul for voluntary payments.

court's order.  But Raul never asked the court for a continuance to allow his counsel to cross-examine the expert—either in his responsive declaration or through counsel during the hearing. He has forfeited the issue.  (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 [" 'issues not raised in the trial court cannot be raised for the first time on appeal' "]; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 ["It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal."]; see also *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 698 (*Meridian*) [" 'the parties must call the [trial] court's attention to issues they deem relevant' "].)  And, as discussed, Raul could have filed an objection to the joint forensic report with the expert or the court, even though the 30-day objection period had not expired.  He did not.

Raul also argues his counsel "was not prepared to address the issue of the contents of the stipulation regarding the joint forensic's report" because the parties' counsel had agreed to continue the hearing.  He claims his counsel thus did not have a copy of the stipulation with him at the hearing.  Raul argues that, had his counsel had the stipulation with him, he would have "pointed out" to the court that his time to object to the joint forensic report "had not yet expired," and the report was admissible without further foundation subject to counsel's cross-examination.

Raul's point is not well-taken.  First, there is no evidence in the record of an agreement between counsel to continue the

hearing.[14]  In any event, the court had a copy of the stipulation and order in front of it.  Indeed, the court read aloud from the provision about the parties having 30 days after receipt of the report to submit written objections.  And, although the court may have had to cut the hearing short, the court confirmed with counsel the basis for Raul's continuance request—counsel never said he wanted a continuance to cross-examine the expert.

Accordingly, on this record, we cannot conclude the court acted "arbitrarily, capriciously, or beyond the bounds of reason" in denying Raul a continuance.  (*Aghaian v. Minassian* (2021) 64 Cal.App.5th 603, 619.)

---

[14]  At the hearing, Raul's counsel represented Sabrina's counsel was aware Raul was out of the country, the two attorneys had "discussed continuing the matter," and Sabrina's counsel had said, "[W]e'll talk with the court."  That discussion does not demonstrate counsel agreed to continue the matter.  Raul's opening brief recounts an email exchange between counsel.  Raul's counsel purportedly asked for a brief continuance the day before Raul's responsive declaration was due, as Raul was out of the country.  Sabrina's counsel apparently responded the next day to inform him the next available hearing date was not until February, which was too long for Sabrina to wait for support.  According to Raul's brief, Sabrina's counsel suggested counsel file Raul's I&E and appear at the hearing to see if the court had a December date.  This email exchange is not part of the record.  Nor did Raul's counsel file—with Raul's responsive declaration—his own declaration attesting to the exchange.  The details of counsel's discussion were not before the court.  We do not consider them.  (*Meridian, supra*, 67 Cal.App.5th at p. 684 [parties to an appeal "must provide citations to the appellate record directing the court to the evidence supporting each factual assertion" and "may not refer to matters outside the record on appeal"].)

17

3.  ***Raul has failed to show the trial court erred in basing temporary spousal support on the joint forensic report's analysis***

The trial court has statutory authority to order temporary spousal support during the pendency of a marital dissolution action.  (Fam. Code, § 3600.)  In contrast to permanent spousal support, the trial court "is not restricted by any set of statutory guidelines in fixing a temporary spousal support amount." (*Wittgrove, supra*, 120 Cal.App.4th at p. 1327 [permanent spousal support is designed to provide financial assistance after dissolution and division of community property, while temporary spousal support is used to maintain the parties' standards of living pending trial and division of the parties' assets and obligations].)  Rather, " '[t]he trial court has broad discretion to determine the amount of temporary spousal support, considering both the supported spouse's need for support and the supporting spouse's ability to pay.' " (*Pletcher, supra*, 68 Cal.App.5th at p. 913; see also *Wittgrove*, at p. 1327 ["Generally, temporary spousal support may be ordered in 'any amount' based on the party's need and the other party's ability to pay."].)

The goal of temporary support " 'is to maintain the living conditions and standards of the parties [and their children] as closely as possible to the status quo, pending trial.' " (*Gruen, supra*, 191 Cal.App.4th at p. 637.)  "A temporary order is intended to allow the supported spouse and children to live in their ' "accustomed manner" ' pending the ultimate disposition of the action.  [Citation.]  'The order is based on need and is not an adjudication of any of the issues in the litigation.' " (*Ibid.*)  Thus, "[i]n exercising its broad discretion, the court may properly consider the 'big picture' concerning the parties' assets and

18

income available for support in light of the marriage standard of living." (*Wittgrove, supra,* 120 Cal.App.4th at p. 1327.) " 'Ability to pay encompasses far more than the income of the spouse from whom temporary support is sought; investments and other assets may be used for . . . temporary spousal support.' " (*Ibid.*) "Trial courts may properly look to the parties' accustomed marital lifestyle as the main basis for a temporary support order." (*Ibid.*)

Raul contends the trial court erred in calculating temporary spousal support based on the joint forensic expert's analysis rather than the evidence of his current income. He argues the expert's analysis was incomplete, "based on a twelve-month period that ended some eleven months earlier." The record supports the court's implicit finding that Raul had the ability to pay the $45,000 ordered in monthly temporary spousal support.

First, we do not conclude the court erred in using the joint forensic expert's total average monthly income figure of $397,600 in calculating temporary spousal support. As the court confirmed during the hearing, the expert assessed Raul's available total income based on a historic average over a five-year period from 2016 through 2020. Thus, it appears the expert did not consider Raul's 2020 income alone. But even if he had, Raul's total income for 2020—$5 million—was representative, indeed, it was the second lowest, of Raul's historical earnings during that five-year period, which ranged between $4.6 and $8.7 million. (Cf. *Pletcher, supra,* 68 Cal.App.5th at pp. 914–915 [where husband's income had "significant fluctuation" from year to year, court abused its discretion in calculating support based "on a single year of income, which happened to be [husband's] highest

19

grossing year on record"].)  In fact, the $397,600 average monthly income figure adds up to $4,771,200 per year—less than the $5 million Raul apparently earned in 2020—based on the joint forensic report, as recounted in the reporter's transcript.  As the report is not part of the appellate record, we presume it supports the court's order.

Moreover, as discussed, the expert did not include Raul's income from January to April 2021 in his analysis because Raul admittedly did not give the expert that information.  Having failed to do so, he cannot now complain the expert's report was incomplete.  Finally, as stated, the orders here were for temporary, not permanent, support.  They were subject to change when—or even before—the expert completed his final analysis.

Raul notes Sabrina's estimate of his total monthly income —based on his March 2021 I&E—was $249,917.75, about $147,682 less than the expert's figure.  As the reporter's transcript shows, the expert calculated the $397,600 average total monthly income figure based on sources of income beyond wages:  "investment income, trust income, rental and other income."  Sabrina's figure was based on the sum of Raul's average monthly salary income of $183,794 and average monthly self-employment income of $66,123, reflected in his March 2021 I&E.  It thus does not appear to account for other sources of income the expert considered.

Nor did Raul's updated November 2021 I&E compel the trial court to find he would be unable to pay $45,000 per month in temporary spousal support.  The November I&E reflected Raul's average monthly income from wages had dropped to $35,143 from the $183,794 stated in his March 2021 I&E.

His I&Es also indicate a drop in his average monthly self-employment income from $66,123 in March 2021 to $12,115 in November 2021. As Sabrina notes, Raul did not explain the drop in his income. He merely stated his "total income for 2021 [was] significantly lower than it was in earlier years due to the pandemic," and he would not receive the substantial bonus he had been paid in 2020. The only evidence Raul gave the court to "indicate that [his] 2021 income [was] drastically different from [his] 2020 income" were his paystubs for a week's worth of wages earned a few weeks before the hearing.

We can infer the court did not find this evidence sufficient to demonstrate Raul's *total* available income had dropped so significantly to render him unable to pay the ordered temporary spousal support. Moreover, the evidence shows the community had significant investments, savings, and real estate holdings, all of which we can infer the court considered in assessing Raul's ability to pay temporary spousal support. (*Wittgrove, supra*, 120 Cal.App.4th at p. 1327 [court may consider investments and other assets available to pay temporary spousal support].) Accordingly, we cannot conclude the court erred in relying on the report—along with the declarations and other evidence the parties submitted—in determining Raul had the ability to pay the temporary spousal support ordered.

Ample evidence also shows Sabrina was in need of support to maintain the "very high" marital standard of living. The record demonstrates the court properly considered Sabrina's needs and the parties' expensive and lavish lifestyle in setting temporary spousal support. Sabrina's August 2021 I&E stated her average monthly "proposed needs" were $26,771.91—about $18,228 less than the amount the court awarded. Her updated

21

I&E filed November 9, 2021, however, apparently claimed a significantly greater amount of expenses. In setting monthly temporary spousal support at $45,000, the court stated it focused on Sabrina's needs as set forth in *both* her August and November 2021 I&Es. The court acknowledged the expense declarations "differ[ed] quite dramatically from one another" but noted "the law is that[,] subject to the ability to pay, the court may order any amount necessary to support the other spouse at the accustom[ed] marital lifestyle."

Citing his declaration, Raul argues Sabrina's November 2021 I&E included "exaggerated amounts for maintenance of [the family] home, groceries, food eating out, utilities, clothing, savings and entertainment," and included the cost of elective surgery as a necessary monthly expense. We can infer the court credited *both* of Sabrina's I&Es—and the November 2021 I&E supported the court setting temporary spousal support at $45,000 rather than the lower number in the August 2021 I&E. The disparity in the parties' respective incomes and Sabrina's declaration describing the family's high standard of living also substantially support the court's implied finding that $45,000 in temporary spousal support would " 'maintain' " the parties' standards of living " 'as closely as possible to the status quo, pending trial.' " (*Gruen, supra*, 191 Cal.App.4th at p. 637.) Raul nevertheless argues the court did not make any findings about the parties' lifestyle before separation. We can infer, however, the court credited Sabrina's declaration and implicitly found the couple's standard of living was as Sabrina described. Indeed, Raul agreed Sabrina described their standard of living accurately but said it had significantly declined over the past three years.

22

In short, on the record before us, we cannot conclude that no judge reasonably could have made the same order as to temporary spousal support.  (*Bower, supra*, 96 Cal.App.4th at p. 899.)  The trial court did not abuse its discretion in ordering temporary spousal support in the amount of $45,000.

## DISPOSITION

The trial court's findings and order after hearing, filed January 7, 2022, are affirmed.  Sabrina Martinez is to recover her costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.


We concur:



EDMON, P. J.



LAVIN, J.